## WEAR v. UNITED STATES.
### No. 11761.

United States Court of Appeals
District of Columbia Circuit.

Argued May 11, 1954.

Decided July 22, 1954.

Mr. David E. Feller, Washington, D. C., appointed by this Court, with whom Mr. Arthur J. Goldberg, Washington, D. C., appointed by this Court, on the brief, for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Mr. Leo A. Rover, U. S. Atty., Washing-ton, D. C., on the brief, for appellee. Mr. William R. Glendon, Asst. U. S. Atty., Washington, D. C., at time record was filed, entered an appearance for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant was indicted in September 1951 on charges of housebreaking, larceny, forgery and the uttering of a forgery.[1] The trial, which was originally set for the following month, did not take place until March 1953.[2] Appellant was found guilty on the forgery counts, and sentenced to a term of not less than sixteen months or more than four years. The sole question in this appeal is whether the trial court erred in refusing to grant appellant's motion for a psychiatric examination pursuant to 18 U.S.C. § 4244.

Defense counsel first moved for a mental examination of the appellant after records were produced at the trial showing that in June 1952, nine months prior to the instant trial, appellant had been acquitted by reason of insanity on charges of larceny and forgery brought in the Criminal Court of Baltimore City. These records also disclosed that he was thereupon committed to the Spring Grove State Hospital, a mental institution at Catonsville, Maryland. Although the hospital records showed that appellant "had adjusted well to the hospital and the psychotic episode seemed to be in remission and that he was a responsible agent at the time he left the hospital," he was never discharged as cured but "left the hospital without authority" on August 28, 1952. The court reserved its ruling until the end of the trial, saying, "When I start a trial I like to go on through with it."

1. 22 D.C.Code 1951, §§ 1801, 2201, 1401.

2. After trial was postponed until December 12, 1951, an affidavit was filed with the court, stating that appellant was then a patient in the Veterans Administration Hospital at Perryville, Maryland, and could not safely appear for trial on that date. Thereafter, he was arrested in Baltimore, and on June 11, 1952, was committed to a mental institution. He escaped in August 1952, was apprehended in California in February 1953, and was then returned to the District of Columbia for trial.

The trial continued. Records of the Baltimore court were introduced showing that in the mental examination made at the time of the Baltimore arrest in May 1952, appellant was found to be "grossly psychotic," preoccupied with his fantasies, and obedient to "suggestions and orders given to him by his voice—in quotes." Thereafter, an episode occurred in the courtroom which further reflected on appellant's competency to stand trial. Dr. William Orsinger, Senior Medical Officer at the District of Columbia Jail, testified for the defense as to complaints of illness by appellant while in jail. Shortly after Dr. Orsinger left the witness stand, appellant fell to the floor in what appeared to be an epileptic fit. His eyes were closed, blood was running out of his mouth and he was quivering. Dr. Orsinger, who was recalled to the courtroom, squeezed appellant's testicles in an effort to determine whether the seizure was genuine. He later testified that appellant responded to this stimulus, indicating that the episode was not due to organic brain disease. The doctor, although not a psychiatrist, stated that the seizure, in his opinion, "was either—and I am unable to distinguish—malingering or hysteria."

After verdict, defense counsel renewed the request for a mental examination of appellant. The court did not rule until two days later when appellant appeared for sentencing, at which time the court said:

"In my opinion and from what I have heard of this case, I think the defendant is a malingerer. When he gets out after being in an institution he goes about cashing checks and acting in a normal manner. To me, that means that he is sane.

"Instead of being criminally insane, he is criminally sane, in my opinion, and I think I can pass a sentence with the recommendation that he be given such treatment as he may desire, and as the authorities may deem necessary in the case." [3]

In Perry v. United States we reversed a judgment of conviction because the trial court failed to act on an oral motion for a psychiatric examination, thereby in effect denying it. Although there we were primarily interested in whether an oral motion was adequate to invoke the statutory procedure, we noted that if it was, "the court was obliged to follow the course prescribed to determine whether or not there should be a trial." [4] We referred to the "method adopted by Congress for ascertaining * * *" whether an accused is competent to stand trial, and we indicated, at least by implication, that where, as in that case, there was an undisputed assertion of prior insanity, recourse to the statutory method was required.[5] The present case falls easily within the ambit of Perry.

The Government now raises certain questions regarding the trial court's discretion to deny a mental examination which our opinion in Perry does not specifically discuss. Because these questions are important in the administration of the still relatively new and unfamiliar statutory provisions governing the determination of competency to stand trial, we deem it advisable to discuss them.

The statute of which § 4244 is a part was enacted in 1949 "to provide for the care and custody of insane persons charged with or convicted of offenses against the United States * * *." [6] It was proposed, after long study, by a committee of the Judicial Conference which, in 1944, reported to the Conference that

---

3. In concluding that appellant was "criminally sane," the court presumably relied on the notation in the hospital records that appellant's psychosis was in remission, and on testimony of a police officer that appellant seemed to be a rational person when questioned three weeks before the trial.

4. 1952, 90 U.S.App.D.C. 186, 187, 195 F.2d 37, 38.

5. 90 U.S.App.D.C. at page 188, 195 F.2d at page 39.

6. Act of September 7, 1949, Pub.L.No.285, 81st Cong., 1st Sess., 63 Stat. 686.

"Judging from results the present procedures have been inadequate for sifting out these mental cases prior to trial and conviction." [7] The committee recognized a need for "the advice of trained psychiatrists * * * in the detection of mental disorders which may not be readily apparent to the eye of the layman." [8] Section 4244 insofar as is here pertinent provides:

"Whenever after arrest and prior to the imposition of sentence * * the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused * * * to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court."

The Government contends that when a motion is filed under this section, the court must examine the grounds set forth in the motion and weigh the "evidence [as] on the issue of insanity" in order to determine whether there is "reasonable cause to believe" that the accused is incompetent to stand trial. It is urged that this is "a question of credibility and issues of fact" to be resolved by the court before it orders a mental examination of the accused. Appellant's view of the statute is diametrically opposed to this. He argues that the court, whether or not it has reasonable cause to believe, must automatically order a mental examination whenever a motion is made therefor. [9]

The statute makes no mention of any preliminary determination by the court; read literally, only the moving party, not the court, must have "reasonable cause to believe"; and it speaks in mandatory terms regarding the court's function thereunder, providing that "upon such a motion * * * the court *shall* cause the accused * * * to be examined [etc.]." (Emphasis supplied.) While these factors tend to indicate that the court has no discretion to decline to order a mental examination, a contrary inference is perhaps suggested by the fact that the motion upon which the court is thus compelled to act is one "setting forth the ground for" believing that the accused is presently insane. We conclude, however, that this requirement confers upon the court merely the limited power to review the motion and to deny it when the ground alleged is frivolous, or when the motion is not made in good faith. [10] This conclusion precludes the "weighing of evidence" by the court to determine whether there is "reasonable cause to believe [etc.]," a result which we think is indicated by the statutory language and by several considerations:

(1) When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with the legislative purpose to provide for the detection of mental disorders "not * * * readily apparent to the eye of the layman."

7. *Report of Committee to Study Treatment Accorded by Federal Courts to Insane Persons Charged with Crime* 3 (Sept. 1944).

8. Id. at page 5.

9. Appellant further contends that while a motion filed by the United States Attorney must be founded upon "reasonable cause to believe," that requirement does not apply to a motion filed on behalf of the accused. The statute, however, makes no such distinction, for it plainly designates a motion filed on behalf of the accused as a "similar motion" to that of the United States Attorney. Moreover, accepted practice regarding motions generally requires one who files a motion to have a ground therefor. See Fed.R. Crim.P. 47.

10. See Shelton v. United States, 5 Cir., 1953, 205 F.2d 806.

(2) Examination of the accused by a psychiatrist is merely the initial step in the statutory scheme and will not result in burdening the courts with unnecessary formal hearings since no hearing is required unless the examination indicates a state of insanity or incompetence.

(3) Realistically, there is little incentive for a competent accused in a non-capital case to seek a finding that he is mentally incompetent to stand trial since such a finding (a) does not relieve him of responsibility for the offense with which he is charged, (b) may result in the confinement of one who had previously been admitted to bail, and (c) gives the court the power to commit him to an institution, under 18 U.S.C. § 4246, until he is competent to stand trial and therefore, instead of reducing the possible period of confinement, may well enlarge it greatly; hence, it can hardly be used as a device to avoid punishment.

We therefore hold that a motion on behalf of an accused for a mental examination, made in good faith and not frivolous, must be granted under the statute. It follows that the trial court erred in denying the instant motion, which plainly was neither frivolous nor in bad faith. The judgment of the District Court is accordingly reversed, and the cause remanded for a new trial, with opportunity for determination of appellant's mental competency to stand trial in accordance with 18 U.S.C. § 4244.[11]

Reversed and remanded.

PRETTYMAN, Circuit Judge (dissenting in part).

I think we ought to send this case back for a determination of the competency of the accused to stand trial, as provided by Section 4244. That is what we did in Gunther v. United States,[1] and, although there is some factual difference between the two cases, we did there hold that it is possible and proper to determine now whether an accused was competent to stand trial at the time he was tried. I think the same rule ought to apply in the present case. After all, the retrial of a criminal case long after a first trial involves many complications as to witnesses, lawyers, etc. It ought to be ordered only when there was an error in the trial itself. The only question upon the present appeal is whether Wear was competent to stand trial. If he was, the verdict of guilty was proper. And upon a proper psychiatric examination it may develop that he was competent. It seems to me ill-advised to order a new trial when proper steps, which under Gunther can now be taken to ascertain whether he was competent at the time of the trial, may prove that he was competent and that the trial was without error. If he was at the time of the trial competent, the trial should stand. If he was not then competent he should have a psychiatric examination to determine his present capacity, and if he is now competent he should have a new trial.

11. In Gunther v. United States, 94 U.S. App.D.C. ——, 215 F.2d 493, we remanded and directed the trial court to grant a new trial only if it determined, in a hearing, that Gunther was mentally incompetent to stand trial at the time he was tried and sentenced. The present case, however, is like Perry v. United States, supra, in which we reversed and remanded for a new trial and which we distinguished in Gunther. In Gunther, unlike both Perry and the present case, there had been a certificate of an official of a mental hospital—to which the accused had previously been committed pursuant to a judicial determination of incompetency—attesting that the accused had recovered his sanity and was then competent to stand trial. This certificate was based upon an examination made shortly before trial by a psychiatrist who, presumably, was still available to testify. Hence, a *nunc pro tunc* determination of mental competency at the time of trial was more feasible than it was in either Perry or the present case. Moreover, in Gunther there had been no request for a mental examination for the purpose of obtaining a judicial determination respecting competency as there had been in Perry and here.

1. 1954, 94 U.S.App.D.C. ——, 215 F.2d 493.