Joseph J. SULLIVAN, Petitioner,

v.

UNITED STATES of America, Respondent.

United States District Court
S. D. New York.

May 31, 1962.

546

Judson A. Parsons, Jr., New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, for respondent.

Edward R. Cunniffe, Asst. U. S. Atty., of counsel.

WEINFELD, District Judge.

This is an amended motion by Joseph J. Sullivan, the petitioner, pursuant to 28 U.S.C. § 2255, to vacate a judgment of conviction under which he was sentenced to imprisonment for eighteen years. The motion is two-pronged.

First, petitioner asks that the conviction be set aside without a hearing in a manner analogous to the granting of summary judgment in a civil action where there is no genuine dispute as to the material facts. Here the ground of attack is that he was put to trial, convicted and sentenced, notwithstanding that a psychiatric examination to determine his then mental competency, pur-

suant to an order of this Court,[1] had not been completed. Additional grounds for the forthwith vacatur of the judgment of conviction without a hearing are:

(1) that the issue of his mental competency at the time of trial and sentencing almost three years ago, through no fault of his, is now difficult of resolution;

(2) that, also through no fault of his, he was prevented from raising these issues on appeal; and

(3) that he was incompetent at the time of his appeal.

Second, and only if the Court decides that he is not entitled to summary relief upon the grounds advanced, then the petitioner requests a hearing on the issue of competency at the time of trial and sentencing, as well as on other issues tendered by him.[2] He further asks the Court to enter an order directing that with respect to all such issues the Government, and not he, shall have the burden of proof.

■ On the facts presented, there can be no doubt that the issue raised by the petitioner as to his mental competency at the time of trial and sentencing requires a hearing.[3] Indeed, Judge Palmieri, before whom the case was tried,[4] has already so determined[5] and appointed petitioner's present counsel to represent him on the hearing so granted. Counsel conducted a most thorough, independent investigation and, as a result, filed the amended motion now before this

1. 18 U.S.C. § 4244.

2. In addition to the grounds urged under the first branch of his motion, these other issues are: (1) whether his conviction is subject to collateral attack because during the trial he was under the influence of tranquilizers and other drugs administered to him by the Government; (2) whether his trial violated due process of law when a statement allegedly was improperly obtained from him and introduced in evidence against him.

3. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) (Per Curiam), reversing 96 U.S.App.D.C. 117, 223 F.2d 582 (1955); Catalano v. United States, 298 F.2d 616 (2d Cir. 1962).

4. The amended petition came on before the undersigned at the Criminal Motion Term. Counsel suggested, and Judge Palmieri agreed, that in view of the fact he might be called as a witness the matter not be referred to him. United States v. Valentino, 283 F.2d 634, 636 (2d Cir. 1960) (Per Curiam); United States v. Halley, 240 F.2d 418 (2d Cir.) (Per Curiam), cert. denied, 353 U.S. 967, 77 S.Ct. 1052, 1 L.Ed.2d 917 (1957). Indeed, in granting petitioner's application for a hearing under 28 U.S.C. § 2255 on June 1, 1961, Judge Palmieri specifically directed the attention of counsel to the latter authorities.

5. Sullivan v. United States, Cr. No. 159-93, S.D.N.Y., June 1, 1961.

Court. The prime question presented under the amended motion is whether, upon the undisputed material facts drawn from court records and documentary evidence in the Government files, petitioner is entitled to a forthwith vacatur of the judgment of conviction without a hearing. The Government opposes, contending that Sullivan is now entitled only to a hearing to determine his mental competency nunc pro tunc as of the time of trial and sentence. It concedes that if upon such a hearing it be found he was not then mentally competent, the judgment must be vacated, but if it be found otherwise, his sentence must stand.

Consideration of petitioner's claim to immediate relief under the amended application requires a detailed review of the facts.

The petitioner was arrested in May 1959. A few weeks later he was indicted, together with four codefendants, on a charge of robbery of a national bank and conspiracy so to do. It appears that two years before, in July 1957, as a result of an automobile accident he sustained a serious head injury with after effects of severe headaches. During his confinement at Federal Detention Headquarters, West Street, New York City, while awaiting trial he manifested various mental aberrations. Analgesics, tranquilizers and barbiturates were administered to him for the constant and violent headaches from which he claimed he was suffering and which, he charged, had been reactivated by blows on the head administered by FBI agents at the time of his arrest. He created many disturbances and his behavior was so bizarre that on June 29, 1959, before the start of the trial, on petition of the Government, joined in by his trial counsel, Judge Palmieri ordered him committed to Bellevue Hospital "for observation and determination as to his sanity."

In view of the inability of petitioner and two other defendants to make bail, the Government and defense counsel were desirous of proceeding to trial promptly. On July 1, two days after the commitment to Bellevue, while Sullivan was still under observation there and before the receipt of any report, the Court, after conferring with counsel, set the trial for July 6. This was after the Assistant United States Attorney, somewhat informally, advised the Court that inquiry at Bellevue Hospital indicated that petitioner's examination would be completed that day. Petitioner's counsel and those representing the co-defendants stated they would be ready to proceed to trial on the day fixed. Sullivan was returned by the Bellevue authorities to court on the morning of July 6 and the trial commenced as scheduled before Judge Palmieri and a jury. A mistrial was declared the next day, following which all defendants waived trial by jury; the case proceeded before Judge Palmieri without a jury and the transcript of the first day was incorporated into the record by consent.

When the trial commenced on July 6, no final report had been received from Bellevue Hospital as to petitioner's condition. However, the next day the Court was in possession of an interoffice communication by a psychiatrist at Bellevue dated July 1 which, after some general observations, noted:

"Tentative impression: without psychosis.
"Awaiting
"1. Neuro consultation
"2. EEG [electroencephalogram]
"3. Film
"4. I.Q. and Rorshach."

On July 8, the third day of trial, the Assistant United States Attorney advised the Court that the Bellevue psychiatrists had completed the diagnosis of petitioner and that there report was he was not psychotic. This advice, however, was erroneous. The error was acknowledged by the Assistant United States Attorney the very next day, July 9, when he told the Court that Sullivan's examination had not been completed because the tests referred to in the interoffice memorandum of July 1 had not been performed. In a letter dated July 7, two

548

psychiatrists at Bellevue advised the Court as follows: [6]

"As per the Court's request, this defendant, who has been examined here between June 29 and July 6, was yesterday returned to court. Our findings, however, during that short period of time were not conclusive and we were unable to complete the necessary examination in order to arrive at an accurate estimation and diagnosis of the case.

"We therefore recommend that he be returned here so that a complete appraisal of the case may be effected."

The Trial Court decided to continue with the trial and indicated that in the event of petitioner's conviction he would be returned to Bellevue for the completion of tests before imposition of sentence. Sullivan's counsel agreed to this procedure, although with some misgivings, inasmuch as he was "a little disturbed by the fact that the doctors feel that there might be something," and suggested that perhaps the judgment should be withheld since, in the event petitioner were found irresponsible, an issue would exist, among others, as to the validity of statements made to FBI agents. The Court indicated that the matter could be handled by appropriate motions at the conclusion of the trial.

The trial continued; both sides rested. The defendant did not testify on his own behalf. Before the rendition of judgment, Sullivan's counsel again adverted to the matter of his client's mental condition. The Court repeated its earlier position that the incompleted inquiry into Sullivan's mental condition need not preclude judgment and if Sullivan were found guilty, his counsel would be afforded an opportunity to make motions, depending upon the final result of the contemplated continued examination, the report of which was expected to take some time.

On July 13 the Court announced its judgment and found Sullivan and his four codefendants guilty. The Court then again stated that Sullivan would be returned to Bellevue Hospital so that his mental examination could be completed. However, he was never returned to that institution and his examination was never completed. The reason for this was that the psychiatrist there, having been advised of Sullivan's conviction, informed the Court there was no need to return him "inasmuch as the Federal prisons are usually provided with neurological consultants and through this means the examination can be completed." Thus, petitioner was sentenced on July 17 without benefit of the completed psychiatric examination or any final determination as to his mental competency. During the course of the sentencing the Court noted its concern about petitioner's condition arising out of the head injury from the automobile accident, but stated that the Bellevue reports "indicate very clearly that Sullivan is not psychotic," a statement which petitioner asserts is not supported by the record. The sole reference in the record to any psychotic condition of petitioner is the "tentative impression: without psychosis," contained in the letter of July 1, 1959, which also notes that four tests were yet to be made. The Court recommended that petitioner be committed to a prison institution where he could receive a complete neurological examination and appropriate treatment.

Sullivan was first confined at the Federal Penitentiary at Lewisburg, where he remained from July 22, 1959 to the middle of November. On November 10, 1959 a psychiatrist at Lewisburg reported that petitioner was psychotic. His diagnosis was "schizophrenic reaction, probably of the Hebephrenic type, although there are pronounced paranoid features at present." In his opinion, petitioner's psychosis began in October 1959.

6. Although dated July 7, this report evidently came to the Court's attention the same day that the Assistant United States Attorney advised the Court that it had been misinformed the previous day.

In December 1959 Sullivan was transferred for further psychiatric observation to the Federal Medical Center at Springfield, Missouri. On June 28, 1960 a psychiatrist at the latter institution found that petitioner had been suffering from severe paranoid schizophrenic psychosis, had hallucinations and that as of the date of the report was in only partial remission. This finding was confirmed in a staff examination a few weeks later. Sullivan remained at Springfield until June 1961, when he was brought back to the West Street Detention Headquarters, New York City, for the hearing on his individually prepared petition for relief under section 2255 of Title 28, ordered by Judge Palmieri. Petitioner's contention is that at present he remembers nothing about being at Lewisburg or about his first few months at Springfield.

The Government's position challenging Sullivan's right to relief under a section 2255 proceeding makes it necessary to refer to his appeal. Following conviction, a notice of appeal was filed on his behalf on July 23, 1959. On May 16, 1960, while petitioner was at Springfield, Missouri, he was permitted to prosecute his appeal in forma pauperis, and appeal counsel was appointed to represent him. Two weeks later the court-appointed counsel concluded that he could not conscientiously advance any grounds for reversal of the judgment. Accordingly, he applied to the Court of Appeals for leave to withdraw as petitioner's counsel and sent a copy of his application to petitioner at Springfield. On June 15, 1960 Sullivan wrote to the appeal attorney that he had no knowledge of the bank robbery; that he did not know what the trial was about and did not remember appearing in court. He made reference to his head injury and said he was told that he had been sent by the Court to Bellevue Hospital for a "psycho examination," which the doctors could not complete in the short time he was there. He requested counsel to obtain a trial transcript and an extension of time to file a brief, and concluded, "Now that my thinking is straight, I would like to know just what did happen in regards to all these matters of the trial & how the court can try & convict a man who didn't even know what he was charged with until now." Evidently, petitioner's letter was received by counsel after the Court of Appeals had granted his motion to be relieved of his assignment, which was on June 17. On June 23, 1960 the attorney so notified petitioner and in response to the matters set forth in Sullivan's communication of June 15, expressed the opinion that:

"[They] are not properly part of the appeal, but, if they can be established, would be the subject of a separate proceeding. Since I was assigned by the Court only for the appeal and for no other purpose, and am now relieved of that assignment, I have therefore forwarded your letter to the Court."

He sent Sullivan's letter to the Clerk of the Court of Appeals with the comment that even if the allegations therein were true,

"[T]hey do not concern the appeal, since they would be the subject of a separate collateral proceeding to attack the trial. Since this would not be part of any appeal, I presume Sullivan should independently obtain an attorney to pursue this, if there is any basis for it."

Copies of Sullivan's letter and counsel's transmittal letter to the Clerk were then distributed to the panel judges who sat on the appeal. Substituted counsel was not appointed to represent Sullivan on the appeal or to present his contentions with respect to the section 4244 proceeding. Since Sullivan was without counsel, each member of the panel read the entire stenographic transcript of the trial and each was "of the opinion that there is ample evidence to justify the conviction of * * * Sullivan and that there were no errors upon the trial." [7]

7. United States v. Pravato, 282 F.2d 587, 591 (2d Cir. 1960), cert. denied (two defendants other than Sullivan), McIvor v. United States, 365 U.S. 824, 81 S.Ct.

Following the affirmance of his conviction, Sullivan filed various petitions under section 2255 of Title 28 which, as already noted, culminated in this amended motion.

■ The essential purpose of section 4244 is to prevent an incompetent person from being brought to trial or imprisoned for the crime charged.[8] It seeks to achieve this objective by a pretrial inquiry when there is reason to doubt an accused's competency to understand the proceedings against him or properly to assist in his defense, by providing for an examination by a qualified psychiatrist, a report to the Court, a hearing upon notice if incompetency is indicated, and a judicial determination. The entire thrust of the statute is to require that the determination of the accused's competency shall be made before he is actually put on trial and to avoid the repetition of the many instances prior to its enactment where defendants had been brought to trial, convicted and sentenced only to have the convictions upset because it was later demonstrated that they had in fact been mentally incompetent at the time of trial.[9]

Against the background of the statute's purpose we consider the petitioner's claim to immediate relief. Upon this record certain facts are beyond challenge. These are, among others, that Sullivan's behavior for some time before trial raised a serious question as to his competency to stand trial and to assist counsel in his defense; that the petition for an examination into his mental competency was presented at the instance of the United States Attorney and clearly was not frivolous—indeed, it was based in part upon the recommendation of the chief medical officer at the West Street Detention Headquarters where Sullivan had been confined for more than five weeks awaiting trial; that upon such petition an order was duly entered pursuant to 18 U.S.C. § 4244, appointing a psychiatrist to examine into Sullivan's sanity and to report to the Court; that although the examination had never been completed and no final or definitive report had been submitted to the Court by the designated psychiatrist, Sullivan was placed on trial, convicted and sentenced.

■■ The Government, recognizing, as indeed it must upon this record, that the statutory procedure to determine Sullivan's competency was initiated but not completed, contends that the omission was merely a procedural error which did not deny him the substance of a fair trial; that admitting there was error in the failure to return Sullivan to Bellevue Hospital for the completion of his examination, all he is entitled to now is a nunc pro tunc determination of his competency—not a reversal of the conviction. I cannot agree. When the statute is properly invoked upon compelling facts as in the instant case, an accused has a substantial right to have the issue of his mental competency to stand trial determined in accordance with the procedure therein provided; he is entitled to a contemporaneous determination which normally affords greater accuracy of judgment than one made years after the event.[10] If in fact it is found that he is not competent, he should not be required to go through an abortive trial; if found competent, there should be no delay in bringing him to trial. This is not only for the benefit of the defendant, but also in the public interest. To put an accused to trial while an order is outstanding to inquire into his mental competency, without the psychiatric report or finding as to his condition, as contemplated by the

705, 5 L.Ed.2d 702; Pravato v. United States, 365 U.S. 849, 81 S.Ct. 811, 5 L. Ed.2d 813 (1961).

8. Perry v. United States, 90 U.S.App.D.C. 186, 195 F.2d 37 (1952); H.R.Rep. No. 1309, to accompany S. 936, 81st Cong., 1st Sess., in 2 U.S.Code Cong. & Admin. News, p. 1928 (1949).

9. Ibid.

10. Provision is made for a nunc pro tunc determination is an entirely different situation—where the alleged incompetency was undisclosed at trial. 18 U.S.C. § 4245.

statute, defeats its very purpose. At this time, upon this record, it cannot be said, one way or the other, whether Sullivan during the trial or at the time of sentence was mentally competent. To determine the issue nunc pro tunc has disadvantages. It is questionable that at present, almost three years after the trial—a delay in no respect attributable to petitioner—a psychiatrist would have as informed an opinion as to whether Sullivan, as he sat through the trial, understood the proceedings or had sufficient ability to consult rationally with his lawyer, as the psychiatrist then appointed to examine him and to make current findings. At best, we can get only the professional judgment of psychiatrists today as to what Sullivan's condition was three years ago. While of necessity all psychiatrists' opinions are matters of judgment, a judgment years after the event appears to be a rather inadequate substitute for the opinion of the psychiatrist appointed for that very purpose in advance of and at the time of trial.[11] The tentative nature of professional judgment and the uncertainty of diagnosis in this field has been recognized by the Supreme Court.[12]

Having properly raised the issue of mental competency, based as it was upon substantial evidence of irrational behavior, Sullivan was entitled to have a complete examination as contemplated by the statute and to have the psychiatrist's report submitted to the Court before he was placed on trial. This not having been done, upon the facts here presented it appears far more realistic and consonant with the interests of justice that the conviction be vacated and a determination made of petitioner's present competency to stand trial.

Recently, in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (Per Curiam), the Supreme Court, in finding that the record did not sufficiently support the findings of petitioner's competency to stand trial, reversed the judgment of conviction, stating:

> "In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent." [13]

In a series of cases where a petitioner's motion for invoking the procedure under section 4244 was denied, the Court of Appeals for the District of Columbia reversed the judgments of conviction in-

---

11. Of course, if the issue had not been raised in advance of trial, then of necessity resort to retrospective judgment is unavoidable.

12. Greenwood v. United States, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956).

13. Id. at 403, 80 S.Ct. at 789. Significantly, the Supreme Court rejected the very same contention regarding a nunc pro tunc hearing advanced by the prosecution here. In Dusky the Solicitor General, in confessing error as to an inadequate determination of petitioner's competency to stand trial, urged that the case be remanded for a further hearing on the issue "with leave [to the trial court] to reinstate the judgment or grant a new trial in its discretion if petitioner is found to have been competent." Memorandum

For The United States p. 16, Dusky v. United States, supra.

Cf. Dandridge v. United States, 356 U.S. 259, 78 S.Ct. 714, 2 L.Ed.2d 757 (1958) (Per Curiam), reversing 101 U.S.App. D.C. 157, 247 F.2d 105 (1957), in which the Supreme Court reversed a conviction where the trial court had denied a motion by a defendant to withdraw his plea of guilty. The Government confessed error in the failure at a hearing on the motion to adequately determine whether at the time of the plea petitioner had been suffering from a disabling illness; rather than adopting the Government's suggestion that a new hearing be had, the Court ordered that petitioner be permitted to withdraw his plea. See Brief For The United States, Dandridge v. United States, supra.

stead of remanding for a nunc pro tunc determination.[14] The Government attempts to distinguish these authorities on the ground that the district courts made no attempt to abide by the provisions of section 4244, whereas here the motion for an order under the statute was granted. It argues that in those instances there was an absolute denial of the accused's right to a pre-trial mental examination, whereas in the instant case there was an inadequate enforcement of Sullivan's rights. This is a distinction without a difference in end result. If anything, there is even greater reason under the circumstances here presented for vacating the judgment of conviction than in those situations where the application was denied altogether.

Finally, the Government contends that the judgment of conviction may not be attacked collaterally under a section 2255 proceeding, since Sullivan's claim was before the Court of Appeals— in short, that the failure to complete the examination was a procedural error which may not be reviewed under section 2255 absent a showing that he was deprived of a fundamentally fair trial, the only basis of which would be a showing that *in fact* he was incompetent at the time of trial. This position under the facts of this case is without substance. First it places upon the petitioner, by reason of the Government's failure to comply with the statute, the burden of showing that he was incompetent at the time of trial, the very issue which was to have been resolved had the statutory procedure been complied with. Next it

assumes that what it terms a procedural error occurred during the trial; it occurred in advance of trial. Apart from this, the facts negate the Government's position. Sullivan, then confined at Springfield and at best in a state of partial remission from his psychosis, was without appeal counsel. He had erroneously been advised by his court-appointed counsel, who was relieved of his assignment, that his claim of denial of the benefits of pretrial competency procedure was subject only to collateral attack.[15] Although Sullivan's appeal was then pending, no other counsel was assigned and it was submitted solely on the stenographic transcript of the trial. When the Court of Appeals affirmed his conviction, Sullivan did precisely what he had been advised by appeal counsel, that is, he initiated a proceeding under section 2255 of Title 28. Now the Government claims that the failure to determine the issue of his competency under the order entered was cognizable on appeal and that Sullivan has resorted to the wrong remedy. It also argues that since Sullivan's letter to the court-appointed appeal counsel raising the issue was submitted to each member of the panel of the Court of Appeals, they must have considered his contentions and in any event, to quote from the Government's brief: "It is sheer speculation to assume that had the alleged inadequacy of the psychiatric examination been raised and argued even more than Sullivan's letter and the record raised it, the Court would have done more than remand for further proceedings." This Court has difficulty

14. Kelley v. United States, 95 U.S.App. D.C. 267, 221 F.2d 822 (1954); Wear v. United States, 94 U.S.App.D.C. 325, 218 F.2d 24 (1954); Perry v. United States, 90 U.S.App.D.C. 186, 195 F.2d 37 (1952). See also, Gunther v. United States, 94 U.S.App.D.C. 243, 215 F.2d 493, 497 (1954) where a nunc pro tunc hearing was ordered, but which the Court of Appeals in Wear distinguished upon the facts. 218 F.2d at 27 n. 11.

15. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (Per Curiam); Kelley v. United States, 95 U.S.App.D.C. 267, 221 F.2d 822 (1954);

Wear v. United States, 94 U.S.App.D.C. 325, 218 F.2d 24 (1954); and Perry v. United States, 90 U.S.App.D.C. 186, 195 F.2d 37 (1952), reviewing this issue on direct appeal, were decided before appeal counsel's withdrawal from Sullivan's case. That collateral attack cannot ordinarily be used in lieu of an appeal to correct trial errors, see Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); Kyle v. United States, 266 F.2d 670, 672 (2d Cir.), cert. denied, 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959); United States v. Angelet, 255 F.2d 383 (2d Cir. 1958) (Per Curiam).

in understanding or accepting the Government's position. Substantial rights are too important to rest on such tenuous foundations or hypothetical assumptions. The Court of Appeals' affirmance of Sullivan's conviction is stated as follows:

"In view of the statement of court-assigned counsel in its motion to withdraw that after reading the record three times he was unable to find any error or appealable issue as to the defendants Dellamura and Sullivan, each member of this panel has read the entire stenographic transcript of the trial. Each Judge is of the opinion that there is ample evidence to justify the conviction of Dellamura and Sullivan and that there were no errors upon the trial." [16]

 Dellamura's situation bore no relationship at all to Sullivan's claim with respect to the issue of mental competency. The Court neither noted Sullivan's claim nor, for all that appears, ever considered or passed upon it. Indeed, in the light of court-appointed appeal counsel's position, there was no reason why the matter should have engaged the Court's attention. No brief was filed on behalf of Sullivan; the Government in its brief urging affirmance never mentioned his contention. The Government's present concession that Sullivan is entitled to a nunc pro tunc hearing on the issue of his incompetency negates its assumption that the matter was considered. The short of it is that Sullivan, through no fault of his own, was denied the effective assistance of counsel and although he specifically raised with counsel, who was relieved of his assignment, the denial of the benefits of section 4244, he was misinformed of his right to present the issue on appeal; this, notwithstanding that his letter raising the very point was before the Court of Appeals. Under these circumstances, to deny him relief under section 2255 of Title 28 would be tantamount to a denial of due process. The judgment of conviction is vacated. Petitioner is entitled to a hearing to ascertain his present competency to stand trial.

The Court expresses to court-appointed counsel who represented petitioner on this motion its appreciation for the extraordinary and skillful services rendered in this matter. His prodigious effort is reflected in an extensive investigation of all the background facts and thorough research of the law. His dedicated service to the cause of his indigent client is in the highest tradition of the Bar.

16. United States v. Pravato, 282 F.2d 587, 591 (2d Cir. 1960).