Perry **HOLLOWAY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18017.

United States Court of Appeals District of Columbia Circuit.

Argued June 18, 1964.

Decided Nov. 5, 1964.

---

Mr. John A. Shorter, Jr. (appointed by this court), Washington, D. C., for appellant.

Mr. Daniel J. McTague, Asst. U. S. Atty., argued the motion for appellee.

Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the motion for appellee.

Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

BAZELON, Chief Judge.

The only allegation of error in this appeal from a forgery conviction is that the trial court erred in denying the defense's pre-trial motion for a mental examination to determine competence to stand trial. After appellant filed his brief in this court, the Government moved to remand for a judicial determination of appellant's competency at the time of his trial over a year ago, that determination to be made after a mental examination.[1] The Government argues that, if appellant is now found to have been competent when tried, he "was not prejudiced by denial of the motion for mental examination." The Government thus implicitly concedes, and we agree, that denial of the pre-trial motion for a mental examination was error. Mitchell v. United States, 114 U.S.App.D.C. 353, 316 F.2d 354 (1963); Lloyd v. United

---

1. The Government submitted that:
   "* * * this Court should remand the case to the District Court with instructions
   "(1) to order appellant committed to Saint Elizabeths Hospital to determine (a) whether appellant was mentally competent to stand trial; * * * and (d) whether appellant is presently competent to stand trial;
   "(2) to hold a hearing to determine the issues presented in (1) supra, and at the request of either party to take evidence and make findings of fact pertinent to the issues presented in (1) supra.
   "(3) if the District Court determines that appellant was incompetent to stand trial, it shall vacate the conviction and order a new trial or, if appellant is determined to be incompetent to stand trial at the time of the hearing, to commit appellant to a mental hospital until he shall become competent to stand trial (24 D.C.C. 301(a))."

States, 101 U.S.App.D.C. 116, 247 F.2d 522 (1957).

■ We must decide whether correction of that error requires a *nunc pro tunc* hearing or a new trial. The Supreme Court rejected the Solicitor General's request[2] for a similar *nunc pro tunc* determination in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The Court held that because of the

> difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent. [362 U.S. at 403, 80 S.Ct. at 789.][3]

We think that *Dusky* applies here. In the present case, the difficulties of retrospective determination in *Dusky* are compounded. Unlike Dusky, Holloway had no mental examination. Thus, there are no records and recollections contemporary with his trial to aid a *nunc pro tunc* hearing. Where the issue is raised on direct appeal, as here, this court has

several times held that an erroneous failure to grant a motion for mental examination must be corrected by remanding for a new trial, with opportunity for determination of the accused's competency to stand trial. Kelley v. United States, 95 U.S.App.D.C. 267, 221 F.2d 822 (1954); Wear v. United States, 94 U.S.App.D.C. 325, 218 F.2d 24 (1954); Perry v. United States, 90 U.S.App.D.C. 186, 195 F.2d 37 (1952).

The judgment is reversed and the case remanded for a new trial if Holloway is judicially determined to be presently competent to stand trial. See Watson v. United States, 98 U.S.App.D.C. 221, 223, 234 F.2d 42, 44 (1956); Cooper v. United States, 119 U.S.App.D.C. ——, 337 F. 2d 538 (decided April 9, 1964) (Judge Wright, concurring).

■ The judicial determination must, of course, be an informed one. It is not likely that the court could make an informed decision from a superintendent's letter that merely states without supporting information and reasons that an accused is considered competent to stand trial.[4] See Gunther v. United States, 94 U.S.App.D.C. 243, 246, 215 F. 2d 493, 496–497 (1954); Dusky v. United States, 271 F.2d 385, 397 (8th Cir.

---

**2.** Memorandum for the United States, p. 12.

**3.** Following *Dusky*, Judge Weinfeld held in Sullivan v. United States, 205 F.Supp. 545 (S.D.N.Y.1962), that failure judicially to determine the accused's competence prior to trial was not "merely a procedural error" which could subsequently be corrected by holding a *nunc pro tunc* hearing:

> "When the statute is properly invoked upon compelling facts as in the instant case, an accused has a substantial right to have the issue of his mental competency to stand trial determined in accordance with the procedure therein provided; he is entitled to a contemporaneous determination which normally affords greater accuracy of judgment than one made years after the event." 205 F.Supp. at 550.

**4.** See Hess & Thomas, *Incompetency to Stand Trial: Procedures, Results, and Problems,* 119 AM.J. OF PSYCHIATRY

713, 715–16 (1963), a study of incompetency to stand trial in Michigan: "[T]he courts fail to use the physician in his appropriate role. The majority of the psychiatrists' reports were empty and meaningless, and yet were accepted and acted upon by the courts as if they contained information which could be construed as evidence and, as such, decided upon."

The need for the court, not psychiatrists, to make the ultimate decision on competence to stand trial was recognized also by the Solicitor General in Memorandum for the United States, p. 9, Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960): "A medical determination on competency is not necessarily the same as a legal determination. A doctor can speak as an expert only in terms compatible with his medical training and experience, and psychiatric terminology and legal standards often reflect different concepts to the use of the same words."

1959), reversed on other grounds, 362 U. S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Such a letter would not come within the meaning of the terms "report" or "certificate" as they appear in D.C.CODE § 24–301, since these terms must be construed compliably with the need for a judicial determination, *cf.* Gunther, *supra*.[5] Thus, it would be necessary for the trial judge to inquire of the examining doctors the basis for their conclusions.[6] He might do this by requiring a more detailed communication from the hospital or by holding a hearing on his own motion, as the circumstances suggest. In no case, however, could he decide the competency question without information.

The need for an informed judicial determination also arises from a fact which pervades the administration of criminal justice. That defendants lack the financial and intellectual capacity to pursue and vindicate their rights is the rule rather than the exception. Protection of the rights of defendants unable to assess, challenge or supplement the superintendent's letter requires that the court be fully informed of the information and reasons upon which the report rests.

■ Appellant was originally arrested on January 10, 1963, and was continuously in jail for nearly 17 months thereafter. We admitted him to bail pending appeal on January 17, 1964, but he was not released pursuant to our order. We discovered this when an appeal from his unsuccessful resort to habeas corpus came to this court, and we were then informed that his release on bond had been withheld because, subsequent to his arrest, probation on an earlier offense had been revoked and a one-year sentence imposed. The Government abandoned this justification, and we directed that the writ issue. Since appellant had been in jail almost 17 months, 12 of which occurred after his sentencing the same day on both the present conviction and the probation revocation, and five of which occurred after this court had ordered him released on bond, it seems clear that he will be entitled to credit, either against his present liabilities under the probation revocation or against the sen-

---

5. The 1955 amendments to D.C.CODE § 24–301 were in part a congressional overruling of that part of our opinion in *Gunther* which seemed to require a hearing whenever an accused's competency to stand trial was in issue. As the legislative history reveals, Congress chiefly feared that hearings in every case would consume too much of the doctors' time. Congress evidenced no quarrel with the *Gunther* statement that competency is in every case a matter for *judicial* decision: in treating the situation in which no objection is made by a party to a statement by the hospital superintendent, it did not *require* but merely *permitted* judicial action on the basis of that statement. Moreover, Congress assumed that the hospital reports to be filed under the statute would be such as would provide a basis for informed judicial decision. Thus it was stated in support of the amendment to D.C.CODE § 24–301(b) that a rule requiring a hearing in every case, even where not requested, "unnecessarily consumes a great deal of time of hospital authorities in coming to court to testify in person to matters *adequately covered by their written report.*" H.R.REP. No. 892, 84th Cong., 1st Sess. 12 (1955) (emphasis supplied). In requiring a hospital to supplement a bald statement of psychiatric conclusion as to competency, a trial judge would be enforcing the understanding of Congress, and would not risk bringing about the effects which the amendatory legislation was intended to prevent.

6. *Cf.* Ragsdale v. Overholser, 108 U.S.App. D.C. 308, 314, 281 F.2d 943, 949 (1960): D.C. CODE § 24–301(e), under which persons committed to St. Elizabeths Hospital may be released, "calls for a *judicial* determination of eligibility for release, aided—but not controlled—by expert medical testimony. Since the hospital superintendent's certificate must be supported by *reasons*, either the petitioner or the government may cross-examine the superintendent or other expert witnesses concerning the predicates for the conclusions and opinions which they express concerning the subject's recovery of sanity * * *." [Emphasis in original.]

The language of D.C.CODE § 24–301 indicates that after the court receives the hospital certificate a hearing would be mandatory if requested by counsel for either party.

tence, if any, ultimately imposed on re-trial of the present case.[7]

Even with such credit, however, this period of incarceration has been substantial and presumably will be taken into account by the District Court in determining what disposition is to be made of appellant pending retrial. We note that D.C.Code § 24–301(a) does not preclude mental examinations being conducted on an outpatient basis if deemed feasible by the hospital authorities. This record shows a refusal by appellant to cooperate in an examination by the Legal Psychiatric Services prior to the first trial, and any persistence in this course would clearly necessitate commitment. In any event, it is for the District Court to examine the situation in all its aspects as it exists upon remand, and to bring its discretion to bear on the facts as they then appear. Whatever the course taken, expedition on the part of all parties is desirable in the light of the history of this proceeding.

The Government's motion for remand is granted in part, in accordance with this opinion. Our disposition necessarily decides the appeal as well.

Reversed and remanded for further proceedings consistent with this opinion.

WRIGHT, Circuit Judge (concurring).

I concur in the court's opinion. While a *nunc pro tunc* hearing may be adequate under some circumstances to determine competency, in the circumstances of this case, in my judgment, a new trial is required.

McGOWAN, Circuit Judge (concurring).

I concur in the action taken by the court—although not in its opinion—for the reason that the result appears to me to be required by Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

7. Appellant has not raised the question of the effect our present reversal may have on his probation revocation. If raised, that question may be appropriate for

determination in the pending habeas corpus proceeding. *Cf.* Gray v. Wilson, 230 F.Supp. 860, 861 (N.D.Cal.1964).