James Edward HALL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 8095.

United States Court of Appeals Fourth Circuit.

Oct. 9, 1961.

William R. Perlik, Washington, D. C. and William T. Jernigan, Alexandria, Va. (Cox, Langford, Stoddard & Cutler, and Joseph D. Whiteman, Washington, D. C., on brief), for appellant.

Harvey B. Cohen, Asst. U. S. Atty., Alexandria, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

Sentences of life imprisonment were imposed on the appellant James Edward Hall, and on one Connie Ellis Plott upon their conviction in the United States District Court for the Eastern District of Virginia of the crime of kidnapping in violation of 18 U.S.C.A. § 1201. Plott has dismissed his appeal, and we are here concerned only with Hall.

The kidnapping itself is not denied.[1] Insanity at the time of the commission of the act is Hall's sole defense, and he contends that the District Court erred in ruling that there was no evidence sufficient to raise a question of his sanity.

■■ While the initial presumption is that a defendant in a criminal prosecution is sane, it is settled law that once "some evidence" is introduced "that will impair or weaken the force of the legal presumption in favor of sanity," it then becomes the Government's burden to prove sanity. "[T]he fact of sanity, as

[1] On the afternoon of July 21, 1959, Plott and Hall, who were then under sentence of Virginia courts, escaped from a prisoners' road gang engaged in highway work in Fairfax County, Virginia. To avoid recapture they hid in the woods for two days and a night and on the morning of July 23 entered Peter Martin Nielson's home in McLean, Virginia, removed $50.-00 from his wallet and forced him to accompany them in his automobile. Their journey, which lasted until sometime after noon on the following day, carried them through the District of Columbia, Maryland, New Jersey, Pennsylvania, Ohio, West Virginia and finally to the home of an acquaintance of Hall near the town of Washington, Pennsylvania. That evening, July 24, Nielson, who was physically unharmed, was told that he was free to leave. He decided to remain overnight, and the next morning Plott and Hall drove him in his car to a nearby highway where they got out and Nielson drove away. Returning to the house of Hall's friend, the defendants found a note on the door informing them that the family would be away for the remainder of the day. The two escapees spent that day in nearby woods and on their return to the house in the evening, were apprehended.

28

any other essential fact in the case, must be established to the satisfaction of the jury beyond a reasonable doubt." This is the holding of the Supreme Court in Davis v. United States, 1895, 160 U.S. 469, 486–487, 16 S.Ct. 353, 40 L.Ed. 499; 1897, 165 U.S. 373, 378, 17 S.Ct. 360, 41 L.Ed. 750, and so it has been interpreted and followed in the lower federal courts.

No quantitative measure is prescribed anywhere, nor could one be formulated, that would enable a trial judge to determine precisely and automatically how much evidence is sufficient to raise an issue as to sanity of the accused. Perhaps our best approach to the inquiry whether the evidence was sufficient in this case to require submission of the issue to the jury, would be to consider a few of the decided cases dealing with similar questions and see what was there deemed sufficient. In Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612, 616, decided by the Court of Appeals for the District of Columbia Circuit three years before Durham v. United States, 1954, 94 U.S.App.D.C. 132, 214 F. 2d 862, 45 A.L.R.2d 1430, the defendant was on trial for rape of a nine year old child. The only evidence raising any doubt as to his sanity was a lapse of memory claimed by the defendant, a statement by a deputy coroner that when brought before him the day after the crime "the man appeared to me to be in more or less of a trance," and the testimony of a police officer that the defendant's appearance was "abnormal." The only psychiatric testimony was that of two experts, both of whom expressed the opinion that the appellant was of sound mind. Even his court-appointed lawyer, hoping to avert a capital sentence at the hands of the jury, made a concession of the client's guilt in his summation to the jury. On appeal the only points raised were first, whether the jury improperly exercised its statutory authority to sentence the defendant to death, and second, whether there was error in the trial court's refusal to grant a continuance as requested in order to produce an additional witness. Nevertheless, the Court

of Appeals *sua sponte* held that enough evidence had been introduced to raise an issue as to sanity which should have been submitted to the jury under the guidance of instructions by the court. Basing its action on the Davis case, the court stated:

"In view of these authorities, it seems clear to us that sanity is an 'essential' issue which, if actually litigated—that is, if 'some proof is adduced' tending to support the defense—must be submitted to the jury under the guidance of instructions." 190 F.2d at page 615.

The District of Columbia Circuit is not alone in the view that even under the traditional right and wrong test of criminal responsibility, only slight evidence will suffice to overcome the presumption of sanity and create an issue for the jury. The Fifth Circuit in Lee v. United States, 1937, 91 F.2d 326, at pages 330–331, certiorari denied 302 U.S. 745, 58 S.Ct. 263, 82 L.Ed. 576, has held that:

"While an accused is presumed to be sane, the presumption is rebuttable and only *slight evidence* to the contrary, admitted in the course of the trial, is sufficient to raise the issue, to be submitted to the jury, with all the other evidence, without shifting the burden of proof. Davis v. U. S., 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499." (Emphasis supplied.)

The evidence requisite to raise the question of sanity for the jury's determination may be slight and not such as to generate a reasonable doubt. Judge Rives, relying on the Davis case, supra, has expressed well the quantum of evidence which will suffice to create a jury question. "To require submission of the issue of insanity, the evidence need not appear to the court sufficient even to raise a reasonable doubt of sanity, for evidence of that weight would demand acquittal." See his dissent in Howard v. United States, 5 Cir., 229 F.2d 602, at page 606, but on this point his view was adopted by the majority on rehearing, Howard

v. United States, 5 Cir., 1956, 232 F.2d 274. See also: Rivers v. United States, 9 Cir., 1959, 270 F.2d 435, certiorari denied 1960, 362 U.S. 920, 80 S.Ct. 674, 4 L.Ed.2d 740; Pollard v. United States, 6 Cir., 1960, 282 F.2d 450; and Fitts v. United States, 10 Cir., 1960, 284 F.2d 108.[2] With this legal standard before us, we turn to the record made in the District Court.

 Dr. F. Regis Riesenman, a court-appointed psychiatrist, called as a witness by Hall, testified that this defendant has a mental deficiency, that he was a moderate moron with an intellectual age of 7 to 9 years and an emotional age between 5 and 8. He went on to describe Hall as a person of impaired or defective judgment and insight, strong and poorly controlled hostility, afflicted by anxiety and impulsive tendencies, with alcoholic, neurotic and paranoid features sufficient to impair his relationship with people; that he was on that account liable to "misinterpret, misidentify, misconstrue the actions, the feelings, or thinking of people."

Neurological examinations disclosed a "left-sided weakness of the face," referred to commonly in lay terms as "Bell's palsy." Dr. Riesenman testified that, whatever the effect of this neurological defect on a person who is normal intellectually and emotionally, its presence was much more significant in this individual, low in intelligence and emotionally disturbed.

There is some indication that Hall may have spent time in one or more mental hospitals.[3] The witness did express the opinion that Hall knew the difference between right and wrong, but maintained that the man's ability to make the distinction was diminished. When asked "would [Hall] be as able to adhere to the right or recognize the right, know the nature and quality of his act as most people, or is it far below the average," Dr. Riesenman replied:

"No, because of the aspects of his personality pattern disturbance, his mental deficiency and his neurological defect there is impairment. There'd be some impairment in his ability to adhere to the right, and, therefore, he would not be considered as culpable or as blameworthy as an individual who did not suffer from any of these, so that there is a diminished responsibility, but I feel that not to the point where it negates criminal responsibility. I feel he is still legally responsible." [4]

The testimony of Dr. Elmer Klein, the Government's psychiatric witness, as it related to Hall was that he was "of rath-

---

2. Some state courts have also recognized that slight evidence will suffice to overcome the presumption of sanity. Flowers v. State, 1956, 236 Ind. 151, 139 N.E.2d 185; Torske v. State, 1932, 123 Neb. 161, 242 N.W. 408. See also, Waycaster v. State, 1939, 185 Miss. 25, 187 So. 205, and Jarrard v. State, 1949, 206 Ga. 112, 55 S.E.2d 706, 709, where the Supreme Court of Georgia, in a case in which insanity was invoked as a defense, held, that testimony by a non-expert witness to the effect that he "had a conversation with the defendant about a year or year and a half ago; that they talked some little bit; that he could not remember the details of the conversation or the subjects discussed; that, from the way the defendant talked, the witness observed that he didn't talk like he used to; that up to that time he had not noticed anything wrong with the defendant, but that he had known him before and talked with

him before, and that he didn't talk then like he had on the last occasion," was sufficient evidence to require the issue of insanity to be submitted to the jury.

3. Dr. Riesenman, when asked the basis of his opinion, replied that he relied, among other things, on information from the Assistant United States Attorneys, and "information supplied to me by the hospitals." The exact nature and extent of Hall's hospital contacts were not shown. If there were prior commitments to mental institutions, this alone would "warrant inquiry" on the question of sanity. Fitts v. United States, 10 Cir., 1960, 284 F.2d 108. However, on the present record we do not rely on this feature.

4. The last statement, though not objected to, was improper as expert testimony, since it undertook to express a purely legal conclusion.

**30**

er limited intelligence," although he thought that "despite his low level of intelligence he did know right from wrong."

A jury issue is thus presented notwithstanding one expert's opinion that Hall had the ability to distinguish between right and wrong, especially when the other expert testified that this defendant, who was described as a "moron" (intellectual age 7 to 9, emotional age 5 to 8) possessed a diminished capacity, "far below the average," to make such distinction. It is for the jury to make its own judgment upon the facts, and it is within its province to agree or disagree with the opinion of any expert. Holloway v. United States, 1945, 80 U.S.App.D.C. 3, 148 F.2d 665, certiorari denied 1948, 334 U.S. 852, 68 S.Ct. 1507, 92 L.Ed. 1774; United States v. Gundelfinger, D.C.W.D.Pa. 1952, 102 F.Supp. 177; 7 Wigmore, Evidence, § 1920, § 1921, § 1937 (1940 ed.); Weihofen, Insanity as a Defense in Criminal Law, (1933) page 222.

We must therefore conclude that the initial presumption of sanity was dislodged by the testimony, thus creating an issue for the jury.

Reversed and Remanded for a New Trial.