Booker T. WIDER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18022.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 16, 1964.

Decided June 7, 1965.

---

Mr. James J. Bierbower, Washington, D. C. (appointed by this court), for appellant.

Mr. Gerald E. Gilbert, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WASHINGTON and DANAHER, Circuit Judges, and BASTIAN, Senior Circuit Judge.

PER CURIAM.

After a jury trial in the District Court, appellant was convicted of assault with a dangerous weapon and of carrying a concealed weapon. He received concurrent sentences of 2 to 6 years and one year, respectively. On this appeal, appel-lant urges that the court erred in finding him competent to stand trial.

On defense counsel's motion prior to the trial, appellant was hospitalized for mental examination pursuant to D.C. CODE § 24–301(a). The resulting hospital report stated that in the opinion of the hospital staff appellant was competent to stand trial, that he was suffering from a mental disease at the time of the examination and at the time of the crime, and that the psychiatrists were unable to render an opinion as to whether or not the crime was a product of the mental disease.

It appears that, notwithstanding the hospital report, defense counsel entertained serious doubts that appellant was competent; and it further appears that both counsel were of the opinion that appellant had an absolute right to waive the insanity defense and keep the issue of insanity out of the case altogether. Because of its importance to our decision, we reproduce here in full a colloquy which occurred during a bench conference at the commencement of the trial:

"*Defense Counsel:* Your Honor, this case has given me a considerable amount of concern. I made a motion for a mental examination for this defendant and that motion was granted. The defendant was sent to Saint Elizabeths for a ninety-day mental examination. They sent a report, the hospital sent a report to the court and I received a copy of it, stating that the defendant was suffering from a mental disease at the time of the commission of the crime but there was no opinion on the productivity. There is no defense in this case other than insanity, but the defendant has denied from the beginning that there is anything wrong with him mentally. Just from a lay point of view, I think the man is very seriously ill. I spoke to Doctor Dobbs, who is more familiar with the case than any of the doctors who examined him—

"*The Court:* Does she agree with the other doctors? There is no disagreement?

"*Defense Counsel:* I think that is right. Doctors Platkin and Hamman examined him. Doctor Dobbs informed me that she had serious doubts as to whether he was competent to stand trial, but she concluded on balance that he was competent.

"*The Court:* The letter from the hospital says he is competent to stand trial.

"*Defense Counsel:* Naturally he has a right to waive insanity defense, if he wants to. The case has given me considerable concern. It occurred to me just in the last five minutes. I wonder whether or not a civil commitment might be appropriate. I haven't discussed it with [Government counsel] at all. This man is, I think, going to be at Saint Elizabeths for a considerable length of time, if he were sent there.

"*The Court:* It is a jury question.

"*Defense Counsel:* It is a jury question in any event, because there is no opinion on productivity. He is a man of fifty years of age. In 1956 he was engaged in an altercation with another person and this person struck him on the head with a hatchet and sent him to the hospital. I talked to the attending physician, Doctor Rollins, R-o-l-l-i-n-s, here in Washington. He informed me that the man was in a coma for about a month. As a result, he is partially paralyzed and has a plate in his head. He looks like around 65, but he is only 50 years of age. This, of course, contributed considerably to his mental ailment, but Doctor Dobbs did tell me that he was probably suffering from the same mental illness prior to the injury, but the injury aggravated the condition. I wanted to inform the court that this has given me considerable concern, for on the factual question, there is no doubt that, in my opinion, he shot his wife, although he disclaims it.

"*The Court:* I am having difficulty understanding you.

"*Defense Counsel:* There is no doubt that he shot his wife, in my mind—assault with intent to kill her, carrying a dangerous weapon. He denies any involvement in the offense at all, but he just doesn't make any sense to me at all. He goes on and on about extraneous things.

"*The Court:* Now, Mr. Hubbart, I am not a psychiatrist and these psychiatrists out there say that he is mentally competent to stand trial. Do you think his condition has changed since the date they made this report?

"*Defense Counsel:* No. He has been the same all along, but possibly a civil commitment—

"*The Court:* If he has been there for ninety days, they ought to have an opinion.

"*Defense Counsel:* He is mentally competent to waive the insanity defense—they say he is, but—

"*Government Counsel:* Your Honor, I don't mean to interpret Mr. Hubbart, because he doesn't need that, but I think perhaps the court may be under the misunderstanding—Mr. Hubbart, I think, is trying to indicate that there is available a defense of insanity, but the defendant totally rejects that and places Mr. Hubbart, who believes that would be the appropriate defense, in the dilemma of having to defend his client on a factual situation which he is convinced overwhelmingly in favor of the Government.

"*Defense Counsel:* That is correct.

"*Government Counsel:* A civil commitment does not seem to me to enter into the picture because the offense of the shooting of his wife, which could have resulted in a far

more serious one of homicide—I think has to be settled in court. I don't see any other answer. Certainly a civil commitment would mean dismissal of our case and I can't see that we would be justified in doing that.

"*The Court:* If what you are bothered about is whether—there was that case in the Supreme Court not long ago.

"*Government Counsel:* The Lynch case?

"*The Court:* Yes. Are you familiar with that case?

"*Defense Counsel:* Yes, Your Honor.

"*The Court:* Does that case help you any?

"*Defense Counsel:* No, because I am familiar with what the position of appellant on appeal was—that the defense of insanity is a defense which may be waived, by the defendant, but the court never considered that point. Instead, they merely said mandatory commitment—the statute does not apply for a defendant who refused to use the insanity defense so it really leaves the question open. But it seems to me that even before the Lynch case that an insanity defense could be waived by a defendant who is mentally competent—appeared to be the law to me even before the Lynch case, but I just want to inform the court that the case has given me a considerable amount of concern. [Government counsel] accurately stated my position. If I could convince him to use the insanity defense, that would be my advice. He has rejected my advice and wants to fight on the facts. There is no factual defense.

"*Government Counsel:* If I may make one additional statement. I want the record to be totally clear on this. Mr. Hubbart has mentioned his client's position on the use of an insanity defense. I do not concur in the conclusion that he has, that it would result automatically in not guilty by reason of insanity. I think it is definitely a question of fact for the jury as to productivity. We have Doctor Platkin on call and we might use him as a rebuttal witness if that defense was used.

"*The Court:* You have witnesses who will say that it was not the product—

"*Government Counsel:* Either that or else they could not state as to the productivity—which would result under McDonald—a fact for the jury—would leave a strictly factual situation rather than one in which we would concede insanity as being a good defense, so I don't concur that the result would automatically be not guilty by reason of insanity. I think the whole issue is a question of fact for the jury.

"*Defense Counsel:* He is right, Your Honor."

 Whether or not defense counsel's statement about his inability to communicate effectively with appellant constituted sufficient objection to require a hearing to determine appellant's competency is immaterial because the decision to proceed to trial in the absence of objection to a report of competency is a decision calling for the exercise of discretion by the court. Whalem v. United States, 120 U.S.App.D.C. ——, 346 F.2d 812, decided April 23, 1965. The hospital report as to appellant's competency to stand trial was not binding on the court, and we think the facts required the exercise of discretion by way of a further investigation by the court into the competency of appellant to stand trial. Since we cannot substitute our discretion for that of the trial judge, the convictions cannot be affirmed.

 We think that Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824 (1960), is authority for the proposition that an inadequate determination of competency is not curable by a *nunc pro tunc* hearing. Accordingly, we reverse the judgment of the District Court

and remand for a new trial to be preceded by a proper determination of appellant's competency to stand trial.

Appellant also urges that the issue of insanity should have been raised notwithstanding his objection. In view of our disposition of this appeal, we find it unnecessary to pass upon this contention but we note that Whalem, supra, treats this problem and may be a guide, if needed, in the new trial.[1]

Reversed and remanded.

---

[1] We also feel it worthwhile to add that should the trial court, in its discretion, decide to inject the issue of insanity into the new trial over appellant's objection, if appellant objects, and should the new trial then result in a verdict of not guilty by reason of insanity, the court and the United States Attorney might wish to consider proceeding under D.C.CODE § 21–355, Supp. IV 1965, for emergency commitment for a determination of present sanity *vel non.*