**UNITED STATES of America,**
**Appellee,**

v.

**Isaac J. TAYLOR, Appellant.**

**No. 13937.**

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1970.

Decided Jan. 20, 1971.

Donald M. Haddock, Alexandria, Va., (Court-appointed counsel), for appellant.

Michael G. Kelly, Atty., Department of Justice (Brian P. Gettings, U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

On appeal from his conviction for assault with a deadly weapon in violation of 18 U.S.C. § 113(c) Isaac Taylor raises numerous questions relating to the procedures followed in the district court after he was reported to be suffering from a mental disturbance. While we find the record adequate to support the determination that he was competent to stand trial, we agree that the denial by the district court of his pre-trial motion for expert psychiatric assistance deprived him of an adequate opportunity to determine the possible existence of a substantial defense of insanity. We remand the case for further proceedings to permit counsel to have assistance in determining whether such a defense may exist.

According to motions filed by defense counsel and uncontested by the government Taylor has an extensive history of mental disturbance. He has been admitted to St. Elizabeths in Washington, D. C. on four occasions, most recently from September 21 to November 21, 1967. He has a history of violence and impulsive action over a period of more than ten years.

In 1968 Taylor was tried for armed robbery in the District of Columbia. His sole defense was insanity. Testimony was elicited that he was "psychotic," had "paranoid thinking," was extremely impulsive and lacked sufficient internal controls. The jury rejected the defense and returned a verdict of guilty, in consequence of which Taylor was sentenced to imprisonment for fifteen years.

At the Lorton Reformatory in Lorton, Virginia, where he was sent to serve his sentence, Taylor was kept under maximum security conditions. The prosecution in this case arises from an occurrence at Lorton during which, the government alleges, Taylor turned on another man and assaulted him with a metal mop wringer.

On January 2, 1969, Taylor's attorney filed a motion for a mental examination pursuant to 18 U.S.C. § 4244.[1] The mo-

---

1. 18 U.S.C. § 4244 provides:

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent

tion recited the history noted above, pointed out that the charged "crime is of a violent and impulsive nature and apparently without rational motive,"[2] and added that "the Defendant himself desires and feels the need for mental therapy." The motion did not allege or suggest that counsel had any cause to believe that Taylor's understanding of the proceedings was in any way deficient or that he had any difficulties in communicating with counsel or in assisting in his defense. Although the motion referred to § 4244, which is directed principally to examinations to determine competence to stand trial, it is inferable from the facts alleged that counsel was concerned primarily, if not exclusively, with an attempt to obtain expert psychiatric opinion to assist him in preparing a defense to the charge based on insanity.

In response to the motion the district judge ordered that within five days Taylor be examined by a St. Elizabeths' psychiatrist to determine whether a full commitment would be required. For reasons not explained in the record the examination was delayed until February 27, on which date two psychiatrists interviewed Taylor at the District of Columbia jail. One of them, Dr. Platkin, Taylor recognized from previous experience at St. Elizabeths. The interview began without incident. For a few minutes Taylor conversed normally about his confinement at Lorton and discussed the attack which resulted in his prosecution. When the conversation turned to his motivations for such conduct, he was unable to ascribe reasons for his behavior, indicating that when he became angry at someone he would attack him. He could not explain why his reactions

to real or imagined provocation were so violent.

Turning from his own conduct, Taylor began to accuse Dr. Platkin of having done nothing to help him during his earlier stay at St. Elizabeths. He then refused to speak further to either psychiatrist because, he said, no one at the hospital had helped him in the past. By way of emphasis to his refusal he approached Dr. Platkin and threatened to "choke the life out of" him. At this point the interview was terminated, having lasted ten minutes altogether.

On the same day the two psychiatrists filed their report, describing the interview and stating their conclusions as follows:

"Though the interview was quite brief and we do not pretend to offer a complete evaluation it is clear that Mr. Taylor fully understands the nature of his charges. There is obviously no memory deficit and Mr. Taylor appears able to understand the proceedings against him and to assist in his defense. In view of Mr. Taylor's own statement that he was fully aware of the nature of his attack on October 12, 1968, and that the attack occurred because he was angry at the person on whom he had made the attack, there is no indication from our present examination that he lacked the requisite competency to commit a crime on that date."

The district judge accepted the report and required no further examination. However, the trial, begun as scheduled on March 3, was not completed. During the testimony of one of the witnesses Taylor suddenly attacked him with a chair.[3] A mistrial was declared and a new trial date set.

to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

2. The reference to the nature of the offense charged was made evidently in an attempt to show that the assault was part

of a habit pattern consistent with Taylor's previous history of irrational behavior when emotionally aroused.

3. The order declaring a mistrial describes the incident as follows:
"Isaac J. Taylor, while being tried in this court on the charge of assault with a dangerous weapon, without provocation or excuse, in the presence of

On September 9, 1969, before a different judge, defense counsel presented a new motion. In it he alleged substantially the same facts as he had in the January 2 motion, asserted that the February 27 interview was inadequate, and invoked 18 U.S.C. § 3006A(e) [4] in support of his request that the court furnish "authority and funds to employ a private psychiatrist to inquire into the Defendant's mental condition and competency both to stand trial and at the time of the alleged offense." The motion was denied at that time and on September 12. The trial proceeded without an insanity defense, and Taylor was found guilty and sentenced to imprisonment for five years, to be served consecutively with his previous sentence.

Although the motions to the trial court, as well as the arguments on appeal, are couched primarily in language suggesting a question of Taylor's competence to stand trial, we think the suggestion focuses on the wrong aspect of the problem. The real issue here is whether, in light of his history as revealed by the factual allegations of the motions, he was afforded a sufficient opportunity to develop a defense of lack of criminal responsibility for his conduct.

■ Whether a person charged with crime is mentally competent to stand trial is a discrete question, governed by different medical and legal standards from the question of mental responsibility. To be competent to stand trial a defendant must have, at the time of his trial, "sufficient present ability to consult with his lawyer with a reasonable degree of understanding—and * * * a rational as well as factual understanding of the proceedings against him." [5] A claim that the defendant was not criminally responsible, on the other hand, is unconcerned with the defendant's understanding of his situation at the time of trial, but is directed entirely to his capacity to understand and to control his conduct at the time of the commission of the offense. The test as applied in this Circuit is whether "at the time of such conduct as a result of mental disease or defect he lacks sub-

the jury, became unduly boisterous, obstreperous and menacing during the testimony of one of the guards at the Lorton Reformatory. Specifically, the said Isaac J. Taylor picked up one of the large chairs in the courtroom, turned over several of the large tables and proceeded towards the guard who was then in the witness chair with the obvious intention of then and there striking him with the chair. The said Isaac J. Taylor was then and there subdued by three of the Lorton guards and a United States marshal. He was handcuffed and forcibly removed from the courtroom while uttering foul and obscene language. The said Isaac J. Taylor continued to remain extremely boisterous and violent and made numerous threats against the guards and others."

4. 18 U.S.C. § 3006A(e) provides:
   "Services other than counsel.—Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The court may, in the interests of justice, and upon a finding that timely procurement of necessary services could not await prior authorization, ratify such services after they have been obtained. The court shall determine reasonable compensation for the services and direct payment to the organization or person who rendered them upon the filing of a claim for compensation supported by an affidavit specifying the time expended, services rendered, and expenses incurred on behalf of the defendant, and the compensation received in the same case or for the same services from any other source. The compensation to be paid to a person for such service rendered by him to a defendant under this subsection, or to be paid to an organization for such services rendered by an employee thereof, shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred."

5. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

stantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." [6] That a defendant may have exhibited such an absence of capacity to control his conduct as to indicate the possibility of a defense of insanity does not, of itself, answer the wholly different question of whether his understanding is presently so limited as to require that he not be tried at all. The one question may have little or no bearing upon the other, for many defendants who may not be held criminally responsible for their unlawful acts are clearly competent to stand trial.

In this case neither the facts alleged in the pretrial motions nor the defendant's conduct gave any indication that he might be incompetent to stand trial. The motions did not allege that his attorney had ever experienced any difficulty in communication or that Taylor had on any occasion exhibited an impaired understanding of the proceedings or of the charges against him. On the contrary, the allegations point to Taylor's acute awareness of his situation. They indicate that he realized the nature of his conduct and the fact that it was highly aberrational. His recognition of his need and desire for psychiatric assistance in controlling his behavior is explicit. All of this suggests the existence of mental disorder, to be sure, but hardly a disorder of the sort that renders a defendant incompetent to be tried.

During the brief psychiatric interview following the first motion, he discussed his conduct rationally until the outburst which occasioned the examination's end, and that outburst carried with it no strong indication of an incapacity to cooperate with a lawyer for whom Taylor had no basis for a prior sense of resentment. If we assume that the initial motion required an examination into the defendant's competence to stand trial, we find the interview that was conducted to have been sufficient for that purpose, and the court properly ordered the case to trial.

There was no need for a subsequent examination of the defendant's competence to stand trial. The second motion recited essentially the same facts as its predecessor; only a contention that the first examination was deficient was added. Where an examination has been conducted so recently as to furnish a basis for a determination of present competence, there is ordinarily no reason to order another. Hall v. United States, 4 Cir., 410 F.2d 653. This is particularly true where, as here, the motion for a second examination fails to allege any facts, observed since the first examination, indicating possible incompetence, and the first motion had itself provided little or no factual basis for questioning the defendant's competence. Nor was the outburst which terminated the first trial of such significance to this question as to require further psychiatric investigation of the question of competence. The whole picture remained one of unimpaired understanding and capacity to cooperate with his lawyer. No such impairment is claimed to have manifested itself in any way during the second trial. Accordingly, we find no error in the determination that Taylor was competent to be brought to trial for the second time.[7]

6. United States v. Chandler, 4 Cir., 393 F. 2d 920, 926.

7. Motions made under 18 U.S.C. § 4244 for examination should not be granted so routinely that the statute amounts to no more than a provision for an automatic continuance on the defendant's request. Ordering an examination is not a perfunctory or ministerial act. It calls for the exercise of judicial discretion to determine whether there is "reasonable cause to believe" that the defendant may not be competent to be tried. The motion is required to state the ground for the belief. While we agree that doubts should be resolved in favor of ordering an examination, we find no doubts in this case where neither the defendant's appearance nor his history as recited in the motion provided any reason to question whether he possessed a rational and factual understanding of the proceedings or could as-

The question remains whether he was given an adequate opportunity to develop a possible defense of insanity. We must conclude that he was not.

■■ In stark contrast to the question of competence the motions were replete with factual allegations casting serious doubt on Taylor's responsibility for his conduct. Both motions recited his extensive history of mental disturbance, his record of impulsive behavior, his own desire for treatment, and previous expert medical opinion to the effect that he was "psychotic" and lacked sufficient internal controls over his conduct. Bolstering these allegations were the defendant's actions at the brief interview and at his first trial. Manifestly, under these circumstances counsel required expert assistance in determining whether there was a basis for a substantial defense of insanity and in preparing and presenting such a defense if, after examination, it appeared justified. Although the first motion requested only

an examination pursuant to 18 U.S.C. § 4244, the motion filed before the second trial requested the appointment of an independent expert to assist in the preparation of the defense pursuant to 18 U.S.C. § 3006A(e). The "expert services" made available under that statute clearly comprehend psychiatric assistance. United States v. Albright, 4 Cir., 388 F.2d 719.[8] By making these services available, the statute goes beyond other provisions relating to determinations of mental illness in enabling a defendant and his attorney to have expert medical assistance throughout the preparation and presentation of an insanity defense.[9]

Once counsel has concluded that these services are necessary to enable him properly to evaluate and present possible defenses, the statute entitles him to secure them for his client on a showing of necessity. While the required quantum of this showing has not often been

sist his attorney to the extent any untrained defendant could assist, in preparing a case.

8. "Where a defendant is indigent and claims reason to doubt his sanity, the government stands ready to supply him with the services of psychiatric experts necessary to his defense. 18 U.S.C. § 3006A(e)." 388 F.2d at 724.

We do not suggest that counsel's specific reference to § 3006A(e) was critical to his right to expert assistance. A motion made wrongly under § 4244, which states facts demonstrating that assistance under § 3006A(e) is necessary, should be treated as having been made under the appropriate section. At least initially, the assistance provided by § 3006A(e) could take the same form as the § 4244 interview; there is no reason why, in every case, a privately employed psychiatrist would be required to furnish the needed services.

9. The assistance of a psychiatrist is crucial in a number of respects to an effective insanity defense. In the first place, the presence or absence of psychiatric testimony is critical to presentation of the defense at trial. "In practical terms, a successful defense without expert testimony will be made only in cases so extreme, or so compelling in sympathy for

the defendant, that the prosecutor is unlikely to bring them at all." Goldstein, The Insanity Defense, 124–125 (1967).

Moreover the use of an expert for other, non-testimonial, functions can be equally important. Consultation with counsel attunes the lay attorney to unfamiliar but central medical concepts and enables him, as an initial matter, to assess the soundness and advisability of offering the defense. The aid of a psychiatrist informs and guides the presentation of the defense, and perhaps most importantly, it permits a lawyer inexpert in the science of psychiatry to probe intelligently the foundations of adverse testimony.

"If an accused is to raise an effective insanity defense, it is clear that he will need the psychiatrist as a witness. He will need his aid in determining the kinds of testimony to be elicited, the specialists to be consulted, and the areas to be explored on cross-examination of opposing psychiatrists."
*Id.* at 126–127. ABA Minimum Standards for Criminal Justice. Providing Defense Services § 1.5 (Approved Draft, 1968) ; *See also* Attorney General's Committee, Poverty and the Administration of Criminal Justice (1965) ; Brennan, Law, Psychiatry and the Mentally Ill. 49 ABAJ 239 (1963).

the subject of review, we have no doubt but that it was met here.

■ We cannot accept the truncated interview of February 27 as having met the need for expert assistance shown by counsel. Unlike a determination of competence to stand trial, which focuses on a limited aspect of a defendant's present mental condition, an inquiry into possible lack of criminal responsibility at the time of commission of the offense involves a complex evaluation of his total personality at a previous point in time. It requires that the expert have a substantial opportunity to observe the defendant and his mental processes.[10]

■ The ten-minute interview was insufficient for such a determination. Its insufficiency and inconclusive nature are revealed in the report itself, which merely summarized the events at the interview and then concluded that Taylor understood the charges, had no memory deficit, would be able to understand the proceedings and be able to assist in his own defense. It made no reference to his psychiatric history, nor did it confirm that the examiners were familiar

with it. At the same time, the psychiatrists proclaimed that they did "not pretend to offer a complete evaluation." Would a complete evaluation based on a thorough examination corroborate, modify or refute the claim that Taylor had "the requisite mental capacity to commit a crime"[11] on October 12, 1968? The report furnished no basis for a resolution of that question.

We cannot speculate on what possible avenues of defense an adequate examination might or might not have revealed to counsel. It is enough that, having demonstrated a real need for expert assistance, he was not afforded it.

We recognize that Taylor's own attitude was at least in part responsible for his plight. It was his belligerence which resulted in the termination of what might otherwise have developed into a sufficient examination of his mental condition. But in some cases a "failure to cooperate may itself be a symptom of mental disorder."[12]

The trial judge was not left without other means of inquiry. There was an indication that Taylor's outburst was precipitated by his anger at Dr. Platkin.

10. *See* Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 274:
"The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject. Gill, Newman & Redlich, The Initial Interview in Psychiatric Practice (1954). See also Finesinger, Psychiatric Interviewing: Principles and Procedure in Therapy, 105 Am.J.Psychiat. 187 (1948). More than three or four hours are necessary to assemble a picture of a man. A person sometimes refuses for the first several interviews to reveal his delusional thinking, or other evidence of mental disease. Menninger, A Manual for Psychiatric Case Study, ch. 1–4 passim. (2d ed. 1962) (hereafter cited as Menninger). See Noyes & Kolb, Modern Clinical Psychiatry, ch. 7 (with bibliography); Knight, Borderline States, 17 Bull. of Menninger Clinic 1, 8 (1953). Paranoid patients particularly may be able to guard against revealing their disorder with extraordinary skill. Menninger 64–65. See Noyes & Kolb, Mod-

ern Clinical Psychiatry 112–13. From hours of interviewing, and from the tests and other materials, a skilled psychiatrist can construct an explanation of personality and inferences about how such a personality would react in certain situations."

11. The report's conclusion to this effect appears to be based on the finding that Taylor was fully aware of what he was doing when he committed the assault. This, of course, is necessary to a finding of criminal responsibility, but it is not the end of the inquiry. In addition to knowledge and awareness, a defendant, to be held responsible for his actions, must have had sufficient internal controls over his actions to conform them to the requirements of the law. United States v. Chandler, 4 Cir., 393 F.2d 920.

12. Judicial Conference of the District of Columbia Circuit, Report of the Committee on Problems Connected with Mental Examinations of the Accused in Criminal Cases before Trial 34 (1966).

Another psychiatrist unknown to Taylor might have found him more cooperative. Alternatively, he might have been temporarily committed and informed of the consequences of non-cooperation. Even had he remained uncooperative, the opportunity for extended observation might have provided an expert with a more informed basis for assessing his motivations and controls. It would also have provided a better opportunity for determining whether his belligerence was a symptom of some deep-seated disorder or merely a canny strategy designed to mislead the experts into thinking him irresponsible. In short, the procedures followed below failed to provide either counsel or the court with an adequate basis for determining whether Taylor ultimately should be regarded and treated as incorrigibly criminal or desperately ill.

█ The error here does not necessarily require that the judgment be set aside. It is entirely possible, despite the indications of mental difficulties, that a thorough examination would not have provided counsel with any meaningful assistance in preparing an insanity defense; it might even have led him to conclude that there was, in fact, no basis for one. In that event, the error would be harmless. Accordingly, we will temporarily suspend the judgment now on appeal and remand the case to the district court with directions to appoint a reputable private psychiatrist to assist defense counsel pursuant to 18 U.S.C. §

3006A(e). The psychiatrist should be instructed to examine Taylor thoroughly and for so long as he deems it necessary in order to reach an informed opinion as to his mental condition. On completion of his examination he will provide a report of his examinations and his conclusions to the court and to counsel. If the report indicates the existence of a substantial question of criminal responsibility, and if defense counsel represents that he intends to rely on it on retrial, the judgment will be vacated and a new trial granted.[13] Otherwise, the judgment of conviction will stand affirmed.

Remanded with directions.

SOBELOFF, Circuit Judge (concurring in part and dissenting in part):

I fully embrace the majority's view that the trial judge erred in denying defense counsel's section 3006A(e) motion for the appointment of an independent psychiatrist to assist counsel in preparing the insanity defense and to inquire into defendant's competency to stand trial. I readily associate myself with this portion of the court's opinion. But the majority concludes that Taylor is entitled to a retrial only if a new psychiatric examination indicates that a substantial question is present as to Taylor's sanity at the time of the commission of the alleged offense. From this disposition I am compelled to dissent, being of the view that Taylor is entitled unconditionally to a new trial on the present record; there is no warrant for the trial court to filter the

13. It will not be requisite to an order granting a new trial, that the judge be persuaded that the defense would be likely to succeed. It will be sufficient if the report is of such character that, if the psychiatrist testified at the trial, the judge would be required to submit the issue to the jury under the standards enunciated in Hall v. United States, 4 Cir., 295 F.2d 26, 28.

We do not share the fears expressed in the concurring opinion that the scope of inquiry on remand has been too severely limited. Taylor was denied not the opportunity to present a defense, but

the opportunity to determine with expert help whether he had a defense worth presenting. The remedy need be no greater than the deprivation. The issues concerning Taylor's participation in a criminal act have already been fairly determined. If after a comprehensive psychiatric examination the private psychiatrist should be unable to offer anything in aid of a defense to criminal responsibility, the previous lack of opportunity for psychiatric consultation will be shown not to have hampered the presentation of any defense he had.

merits of the defense in advance of trial.

Moreover, contrary to the majority's decision, I think a new trial is also mandated by the judge's error in determining that Taylor was competent to stand trial. Either of the errors committed by the trial judge, standing alone, would be sufficient to require a new trial in this case.

## I. COMPETENCY TO STAND TRIAL

The majority holds that the competency determination made prior to the first and second trial was sufficient. I cannot agree that either the first trial judge or the second trial judge, who relied exclusively on the prior determination, had an adequate basis intelligently to evaluate Taylor's competency to stand trial.

### A. *Competency Determination at the First Trial*

The institutional psychiatrists' interview with Taylor was too cursory to support a finding of competency to stand trial. It is an elementary principle that "the value of a psychiatrist's testimony depends largely upon his opportunities for observation and the facts he observes." Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 270 (1964). I agree with my brethren that the question of criminal responsibility is ordinarily more complex than the issue of competency to stand trial. However, it does not follow that a ten-minute, superficial interview is sufficient to determine even competency, especially in the face of the doubt on this point explicitly

articulated by counsel in obvious good faith. While it is true as a general matter that there is "no set period required for a mental examination," Wynder v. United States, 122 U.S.App. D.C. 186, 352 F.2d 662, 663 (1965), I have been unable to find a case sustaining a competency determination as extraordinarily truncated as the one now before us. Examinations more extensive than this one have been disapproved. Bush v. McCollum, 231 F. Supp. 560, 563–564 (N.D.Tex.1964), aff'd, 344 F.2d 672 (5th Cir. 1965) (40 minutes).[1]

The majority concedes that Taylor's belligerence at his psychiatric examination may itself be a "symptom of mental disorder" and raised a question as to Taylor's sanity at the time of the commission of the alleged offense that was inadequately resolved in the ten-minute interview. But Taylor's state of mind at the abbreviated examination prior to trial was clearly even more relevant to his competency to stand trial. His erratic behavior should have prompted an extended psychiatric investigation as to his competency rather than providing the basis for terminating any further inquiry.

Nor was the information supplied the judge by the psychiatrists sufficient to allow him to make an independent judgment on the competency issue. The cases make it abundantly clear that it is for the fact finder to ascertain the mental condition of the accused; the issue may not be left to the mere conclusions of the experts. This principle applies with equal force to the judge's determination of competency, Holloway v. United States, 119 US.App.D.C. 396, 343 F.2d 265 (1964),[2] and the jury's

1. *See also* Birdsell v. United States, 346 F. 2d 775 (5th Cir. 1965), demonstrating the potential unreliability of even a two-hour examination. Moreover, "[i]t is worthy of note that recent studies have cast significant doubt on the reliability of single-interview psychiatric evaluation." [citations omitted] Greer v. Beto, 379 F.2d 923, 926 n. 1 (5th Cir. 1967) (separate opinion).

2. "A medical determination on competency is not necessarily the same as a legal determination. A doctor can speak as an expert only in terms compatible with his medical training and experience, and psychiatric terminology and legal standards often reflect different concepts to the use of the same words." Memorandum for the United States, p. 9, Dusky v. United

decision on criminal responsibility, Rollerson v. United States, *supra* 343 F.2d at 274. Here the psychiatric report submitted to the court merely summarized the events at the brief interview without even referring to the defendant's extensive psychiatric history, and quickly concluded that Taylor was competent to stand trial and sane at the time of the alleged offense. The psychiatrists seem to have treated Taylor's recollection of the attack of October 12, 1968, as indicative of competency to stand trial. Although absence of a memory deficit as to that episode may be relevant to the competency issue, such a finding hardly settles defendant's capacity to communicate with his lawyer and understand the proceedings against him.

The psychiatrists' conclusion was accepted without question despite their own admission that "the interview was quite brief" and their disclaimer that "we do not pretend to offer a complete evaluation * * *." Just as the majority concludes that the report contained within itself the seeds of its own dubiety on the question of criminal responsibility, so too did the report patently reveal its inadequacy on the issue of defendant's competency to stand trial.

The majority's conclusion that Taylor's competency was adequately determined rests partially on the assertion that "the real issue here" is not competency to stand trial, but denial of a sufficient opportunity to develop a defense of lack of criminal responsibility. But the majority concedes that "the motions to the trial court, as well as the arguments on appeal, are couched primarily in language suggesting a question of Taylor's competence to stand trial." I would add that counsel specifically requested a psychiatric examination of defendant's competency and cited section 4244 which is directed exclusively to the competency of the defendant to stand trial. The question

of Taylor's competency is squarely before us, and this court is not justified in displacing that issue and substituting its judgment for that of counsel as to whether competency is a "real issue."

The majority's assertion that competency is not "the real issue" is bolstered with the statement that "neither the facts alleged in the pretrial motions nor the defendant's conduct gave *any* indication that he might be incompetent to stand trial." (Emphasis added.) This seems to be directly contradicted by the majority's later conclusion that as to criminal responsibility those same motions were

> replete with factual allegations casting serious doubt on Taylor's responsibility for his conduct. Both motions recited his extensive history of mental disturbance, his record of impulsive behavior, his own desire for treatment, and previous expert medical opinion to the effect that he was "psychotic" and lacked sufficient internal controls over his conduct.

I have no doubt that the majority is correct in stating that criminal responsibility and competence to stand trial are very different concepts governed by different medical and legal standards. But that fact does not explain why the factors set forth in the motions quoted above do not give "any indication that [Taylor] might be incompetent to stand trial." Surely defense counsel's expressed concern over his client's competency and his motion for a psychiatric investigation cannot be said to be frivolous, and should not have been disregarded.

B. *Competency Determination at the Second Trial*

Second, and to my mind even more important than the erroneous determination of Taylor's competency at the first trial, was the denial of a new examination as to his competency at the second trial six months later.

States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), *quoted* in Holloway

v. United States, 119 U.S.App.D.C. 396, 343 F.2d 265, 267 at n. 4 (1964).

The majority maintains that there was no need for a subsequent examination of defendant's competency at his second trial, citing *Hall v. United States*, 410 F.2d 653 (4th Cir. 1969), for the proposition that "where an examination has been conducted so recently as to furnish a basis for present competence, there is ordinarily no reason to order another." In *Hall*, however, the examination had been conducted only one month before the issue was again raised; in the instant case more than six months elapsed between the original examination and the second trial. Section 4244 deals with a class of potentially unbalanced defendants whose condition can fluctuate widely—from aggravation to remission—over relatively short time spans. The question of Taylor's competency at his second trial was hardly foreclosed by the determination made six months earlier. Even if it is assumed that the determination of competency before the first trial was unexceptionable, the significant period of time that intervened created a separate question of capacity to participate in the second trial. Counsel's new request for competency determination should have been granted.

Directly in point is *Meador v. United States*, 332 F.2d 935 (9th Cir. 1964). The defendant in that case was examined (for one hour) and a report filed. Then after a hearing in which the examining psychiatrist testified that Meador was competent, findings to that effect were made. Some five months after the original examination and

three-and-a-half months after the hearing a motion for a new examination was addressed to a second judge. Relying on what had gone before, the judge denied the motion. The Court of Appeals reversed. Recognizing that an "examination, report, testimony or finding" can be "so recent and so persuasive that a renewal of such a motion could be said to be frivolous," 332 F.2d at 938, n. 5, the court found the time lag in that case too great.

Moreover, the second district judge was aware of the fact that Taylor's first trial had aborted when he attacked one of the witnesses with a courtroom chair. This bizarre behavior, in itself, should have aroused suspicion about Taylor's present condition. When combined with the inadequacy of the initial determination of Taylor's competency, a new psychiatric inquiry was imperatively called for before proceeding to trial.

## C. *The Proper Remedy*

The error of the second trial judge in proceeding to trial requires that the judgment of conviction be vacated and the case remanded for a new trial if, after an inquiry into his competency, defendant is found able to stand trial.

When competency has been erroneously determined before trial, the error has sometimes been thought to be correctible in a *nunc pro tunc* hearing, in which the validity of the former trial is retrospectively ascertained. Such a procedure would be inappropriate in this case.[3] In *Dusky v. United States*, 362

---

3. It has been said that when there is a direct appeal from a failure to adequately comply with section 4244, as opposed to collateral attack on the conviction, the judgment must be vacated. *Compare Morris v. United States*, 414 F.2d 258 (9th Cir. 1969) (direct appeal); *Hansford v. United States*, 124 U.S.App.D.C. 387, 365 F.2d 920, 926, n. 16 (1966) (direct appeal); *Holloway v. United States*, 119 U.S.App.D.C. 396, 343 F. 2d 265, 267 (1964) (direct appeal); *Meador v. United States*, 332 F.2d 935 (9th Cir. 1964) (direct appeal) *with United States v. Walker*, 301 F.2d 211

(6th Cir. 1962) (28 U.S.C. § 2255 motion); *Floyd v. United States*, 365 F. 2d 368, 375 (5th Cir. 1966) (section 2255 motion); *Krupnick v. United States*, 264 F.2d 213 (8th Cir. 1959) (section 2255 motion). This is a direct appeal.

On the other hand it has been argued that "[t]he entire thrust of the statute is to require that the determination of the accused's competency shall be made before he is actually put on trial," and that accordingly, the failure to order an examination or otherwise properly to determine competency when so moved under the statutory procedure requires the vaca-

U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed. 2d 824 (1960), the Supreme Court held that,

> In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent.

Thus the Court rejected the Government's express prayer for a *nunc pro tunc* hearing.[4] In Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Court adhered to this course, emphasizing the "need for concurrent determination." 383 U.S. at 387, 86 S.Ct. 836.[5] This court acknowledged a new trial as "the proper remedy" in Clonch v. Boles, 419 F.2d 393, 394 (4th Cir. 1969).

Clearly "the difficulties of retrospective determination in *Dusky* are compounded [when there has been] no

mental examination." Holloway v. United States, 119 U.S.App.D.C. 396, 343 F.2d 265, 267 (1964). *Compare* Wear v. United States, 94 U.S.App.D.C. 325, 218 F.2d 24, 27 n. 11 (1954), *with* Gunther v. United States, 94 U.S.App. D.C. 243, 215 F.2d 493, 497 (1954). *See also* Heard v. United States, 129 U.S.App.D.C. 100, 390 F.2d 866 (1968); Blunt v. United States, 128 U.S.App. D.C. 375, 389 F.2d 545, 549 (1967); United States v. Kendrick, 311 F.2d 110, 113 (4th Cir. 1964). Here, there was no examination for capacity to participate in the trial that resulted in Taylor's conviction, (Part I B, above), and there was no adequate examination even before that date (Part I A, above). Thus there are no sufficient, contemporaneously made medical records upon which a *nunc pro tunc* determination could be based.

## II. CRIMINAL RESPONSIBILITY

I fully agree with the majority that the trial judge committed error in denying counsel's motion under § 3006A(e) for the appointment of a disinterested psychiatrist to assist in the preparation of an insanity defense.[6] Since authori-

tion of judgment even on collateral attack. Sullivan v. United States, 205 F.Supp. 545, 550–552 (S.D.N.Y.1962). The argument seems to be supported by the Supreme Court's resolution of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), which involved a collateral attack on a state conviction. *See* note 5, *infra. See also* Clonch v. Boles, 419 F.2d 393 (4th Cir. 1969); Wider v. United States, 121 U.S. App.D.C. 129, 348 F.2d 358, 361 (1965); Kelley v. United States, 95 U.S.App.D.C. 267, 221 F.2d 822, 825 (D.C.Cir. 1954).

4. Memorandum for the United States, p. 16. Dusky v. United States, *quoted in* Sullivan v. United States, 205 F.Supp. 545, 551 (S.D.N.Y.1962).

5. Even the dissenting Justices acknowledged that a new trial was the correct remedy. "Since our further premise is that the trial judge should and could have avoided error, a new trial seems not too drastic an exaction in view of the proof

problems arising after a significant lapse of time." 383 U.S. at 388, 86 S.Ct. at 843.

6. Section 3006A(e) represents an important advance in assuring that every accused person have ample opportunity to prepare an effective case, and may be of constitutional magnitude. Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965).

"Unquestionably in the proceedings below the defendant, if financially able, would have had the right to call a privately retained psychiatrist as a witness. It is obvious that only his inability to pay for the services of a psychiatrist prevented a proper presentation of his case. The Supreme Court has unmistakably held that in criminal proceedings it will not tolerate discrimination between indigents and those who possess the means to protect their rights." 350 F.2d at 573.

While the Supreme Court in United States ex rel. Smith v. Baldi, 344 U.S.

zation was refused, court-appointed counsel was forced to trial without opportunity to make adequate exploration of the potential for an insanity defense. It is altogether possible that a meritorious defense was blocked. I disagree, however, with the majority's uniquely fashioned remedy. It is ill conceived, and a new trial should be awarded unconditionally.

The majority remands to the District Court with directions to appoint an independent psychiatrist pursuant to § 3006A(e) to examine the defendant. The judge is told to grant a new trial only if the psychiatric findings are of such character that if the examining psychiatrist testified at a new trial, the issue of defendant's insanity would be required to be submitted to the jury.[7]

The majority reasons that if the psychiatric findings are found insufficient to raise a jury question as to Taylor's sanity, the trial judge's error in denying the § 3006A(e) motion will have been proved harmless and the insanity defense was destined to fail. This, however, misconceives the full consequences of the error in denying the defense pretrial motions under § 3006A(e). The judge's denial of the motions not only deprived counsel of the opportunity to have an independent psychiatrist examine Taylor and testify at trial, but also withheld from counsel the full assistance of a psychiatrist in preparing and presenting the insanity defense. With the guidance of an independent psychiatrist, counsel might have been able to elicit helpful testimony from the other witnesses at the trial as to Taylor's mental state at the time of the commission of the alleged offense. Such assistance also would have permitted the lawyer on cross-examination to probe searchingly the foundation of any adverse testimony, and perhaps to turn the testimony to the defendant's advantage. Thus, even if the findings of the psychiatrist now to be appointed should prove insufficiently conclusive by themselves to raise a jury issue as to Taylor's insanity, it does not follow that the insanity defense would fail at a full trial.

The majority, in footnote 13, makes the indisputable pronouncement that "the remedy need be no greater than the deprivation." However, it is seriously mistaken, I respectfully submit, when it seeks to imply thereby that its limited remedy is sufficient, without a new trial, to cure the error committed in refusing the requested examination before trial. If a psychiatric report had been in counsel's hands in the course of his preparation for trial, he could have built upon it to develop a full trial strategy. The course the majority prescribes precludes this possibility unless the judge, screening the bare psychiatric testimony, unaided by other evidence which might have developed at

561, 73 S.Ct. 391, 97 L.Ed. 549 (1953), declined to declare a constitutional right to the aid of a psychiatrist, the underpinnings of this early reservation have been eroded by a long series of decisions, notably, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961).

*See* Davis v. United States, 413 F.2d 1226, n. 5 (5th Cir. 1969); Jackson v. United States, 118 U.S.App.D.C. 341, 336 F.2d 579 (1964) (concurring opinion); Brown v. United States, 118 U.S. App.D.C. 76, 331 F.2d 822 (D.C.Cir. 1964); Bush v. McCollum, 231 F.Supp.

560, 564–565 (N.D.Tex.1964), aff'd, 344 F.2d 672 (5th Cir. 1965).

However, it is not necessary to reach this constitutional issue, since Taylor had a plain statutory right under § 3006A(e) to the appointment of an independent psychiatrist to assist in his defense and to advise his counsel on all aspects of the case, including competency to stand trial.

7. Although the majority suggests that the report should indicate a "substantial question of criminal responsibility," their reliance in footnote 13 on Hall v. United States, 295 F.2d 26, 28 (4th Cir. 1961), makes clear that the report need only establish slight evidence of Taylor's insanity to warrant a new trial.

trial, concludes that a meritorious defense of insanity is present.

There is a vast and incalculable difference between a timely psychiatric examination with a report delivered to counsel when he is preparing for trial, and the mere submission of a report after trial; on a circumscribed remand. The former can be a vital aid to a defendant, the latter is only its pale shadow, of limited utility at best.

In the absence of perfect foresight, no intervening judicial assessment as to what would, or would not, be established at trial is possible in the special hearing the majority has prescribed. The right to present a defense is absolute. It should never depend upon preliminary screening by the judge to determine whether the defense is substantial, as the majority directs in this case. The majority's remedy unwittingly undermines section 3006A(e)'s enlightened effort to advise and assist defense counsel in his preparation for the trial and introduces the potential for denying the defendant the very opportunity for the development of the insanity defense and for its uninhibited presentation which was the congressional purpose in enacting section 3006A(e).