**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4136**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ROBERT PATRICK HOFFMAN, II,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:12-cr-00184-RGD-LRL-1)

———————

Argued:  March 26, 2015           Decided:  May 5, 2015

Amended:  June 2, 2015

———————

Before TRAXLER, Chief Judge, DUNCAN, Circuit Judge, and DAVIS, Senior Circuit Judge.

———————

Affirmed by unpublished opinion.  Senior Judge Davis wrote the opinion, in which Chief Judge Traxler and Judge Duncan joined.

———————

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Robert John Krask, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia; Heather M. Schmidt, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Keith Loren Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States

Attorney, Alexandria, Virginia, Alan M. Salsbury, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

After a five-day jury trial in the Eastern District of Virginia, Appellant Robert Patrick Hoffman, II was convicted of attempted espionage and sentenced to thirty years' imprisonment. On appeal, Hoffman argues that his defense was prejudiced as a result of the district court's handling of his pretrial motions for expert services under the Criminal Justice Act of 1964 (the "CJA"). As relief, he apparently seeks a conditional remand to the district court for the appointment of a psychiatrist and, depending on the outcome of a thorough psychiatric examination, a new trial affording him an opportunity to present a mental status defense. Hoffman also asks that we review the district court's rulings on certain pretrial motions filed by the government under the Classified Information Procedures Act (the "CIPA"). Finding no reversible error, we affirm the judgment of the district court.[1]

### I.

### A.

The evidence adduced at trial permitted the jury to find the following facts.

---

[1] In light of our denial of Hoffman's pro se request for substitution of counsel, we grant his motion for leave to file a supplemental brief pro se. In his pro se brief, Hoffman separately raises a number of issues that we have reviewed and do not find meritorious.

Prior to his retirement in the fall of 2011, Hoffman served in the United States Navy for approximately twenty years, working as a cryptologic technician aboard fast track or guided missile submarines. Hoffman held a top secret/sensitive compartmentalized information clearance and regularly received classified information in his work, including information relating to the capabilities, vulnerabilities, and missions of United States submarines, and the methods of operation employed by adversaries of the United States. Hoffman entered into a number of nondisclosure agreements with the United States government, and he received regular training on his obligations not to divulge classified information to persons not authorized to receive it and to report to authorities any attempt by an unauthorized person to solicit classified information.

In the fall of 2012, the FBI commenced an investigation of Hoffman to determine whether he was in contact with another country's intelligence service. Specifically, agents of the FBI conducted a "false flag operation" in which they contacted and maintained communications with Hoffman while assuming the identities of agents of a foreign intelligence service. Communicating by email, an undercover FBI agent posing as an agent of the Russian secret service named "Vladimir" solicited information from Hoffman and instructed him in how to make dead drops of documents at a state park in Virginia Beach, Virginia.

4

Hoffman indicated his willingness to assist the Russian agency and, over the course of several exchanges of correspondence and visits to the dead drop site, he disclosed national defense information and advice for the Russian navy, including certain classified information.

According to the government, Hoffman came to suspect that he might be under surveillance and, for this reason, decided to report his activities to the FBI. On October 31, 2012, Hoffman visited the FBI's office in Norfolk, Virginia and reported that he had been recruited by the Russian intelligence service to provide certain information. Hoffman claimed that he maintained communications with "Vladimir" in order to set up the Russian agent for investigation and apprehension by the FBI and the CIA, and that he did not intend to injure the United States.

The FBI interviewed Hoffman and instructed him to give advance notice of any further contacts he had with Russian agents. "Vladimir" subsequently contacted Hoffman by email inquiring about Hoffman's failure to make a planned visit to the dead drop site. Hoffman reported this contact to the FBI, and an FBI agent instructed him to make a concise response to the email. Hoffman responded to "Vladimir" by coded email on November 8, 2012 that he had encountered a problem and would not be able to visit the dead drop site again until November 18. On

November 17 and 18, 2012, Hoffman returned to the dead drop site without notifying the FBI.

On December 5, 2012, a grand jury returned a single-count indictment against Hoffman for attempted espionage, in violation of 18 U.S.C. § 794(a). The indictment alleged that Hoffman attempted to communicate to the Russian Federation information relating to United States national defense, including information classified as secret. The indictment alleged further that Hoffman disclosed this information with intent and reason to believe that it would be used to injure the United States and to advantage the Russian Federation. The FBI arrested Hoffman the following day. The district court appointed counsel and set a pretrial motion deadline of February 28, 2013, with trial to commence on June 17, 2013.

On March 21, 2013, defense counsel filed an ex parte motion under the CJA requesting appointment of a mental health expert to conduct an examination of Hoffman and to provide professional opinions to assist the defense. Specifically, counsel sought opinions about how to communicate with Hoffman and whether Hoffman intended to commit espionage, as well as any expert

6

mitigation evidence for presentation at sentencing should Hoffman be convicted.[2]

On April 17, 2013, the district court conducted an ex parte hearing on the CJA motion. In support of the motion, defense counsel expressed concerns about Hoffman's ability to convey information about his background accurately and whether Hoffman was suffering from delusional thinking. The district court agreed that counsel's account raised the question of Hoffman's mental competency and insisted that counsel was required to give notice to the government. Defense counsel responded that they intended to give notice once they determined that they would present a mental status defense but that they had not yet made any such decision. Notwithstanding counsels' position, the district court directed counsel to issue and file immediately a notice under Rule 12.2 of the Federal Rules of Criminal Procedure[3] and a motion for an examination to determine Hoffman's competency to assist his counsel and to stand trial.

---

[2] We have redacted from the public version of this opinion certain information that remains under seal. Counsel for the parties, who have received an unredacted copy of this opinion, are directed to advise us within thirty days whether the redactions remain necessary and appropriate.

[3] Rule 12.2 provides that a defendant who "intends" to assert an insanity defense or to introduce expert evidence of a mental condition bearing on the question of guilt must notify an attorney for the government in writing and file a copy of the notice with the court. Fed. R. Crim. P. 12.2(a),(b).

Acknowledging that the pretrial motion deadline had passed, the court stated that it would grant leave for these late filings. The court declined to grant counsel's request for a broader mental examination but stated that it would take the matter under advisement and entertain the request if raised again upon completion of the competency examination.

Following the district court's directive, defense counsel filed a Rule 12.2 notice and a motion for a competency examination under 18 U.S.C. § 4241,[4] which the court later granted. Thereafter, the government filed a motion for its own examination of Hoffman to determine his mental status at the time of the charged offense under 18 U.S.C. § 4242[5] and his present competency to stand trial under 18 U.S.C. § 4241.

The district court held a pretrial conference on April 23, 2013, at which defense counsel moved to withdraw the Rule 12.2 notice filed less than a week before, arguing that the notice was premature until any mental examination results became

---

[4] Section 4241 provides that a criminal defendant or the government "may file a motion for a hearing to determine the mental competency of the defendant." 18 U.S.C. § 4241(a). If the motion is granted, the court may order a psychiatric or psychological examination and report before the date of the hearing. Id. § 4241(b).

[5] Section 4242 provides that, upon a defendant's filing of a Rule 12.2(a) notice, the district court must grant any government request for a psychiatric or psychological examination of the defendant. 18 U.S.C. § 4242(a).

available that might support an insanity defense. The district court reluctantly permitted withdrawal of the notice, expressing its concerns about delays that might result if the defense decided to reissue the notice later. Upon withdrawal of the notice, the government withdrew its § 4242 motion.

The grand jury returned a superseding indictment on May 8, 2013, to include an additional allegation that Hoffman attempted to communicate top secret information about United States capabilities to track foreign warships. The district court granted a continuance and set a revised pretrial motion deadline of May 31, 2013, with trial to commence on August 12, 2013.

Meanwhile, the court appointed forensic psychiatrist Dr. Gregory Saathoff to conduct the competency examination of Hoffman. Dr. Saathoff submitted his report to the court on June 3, 2013, concluding that Hoffman understood the nature and consequences of the proceedings against him and that he was able to assist his counsel in his defense. In making his assessment, Dr. Saathoff examined Hoffman's jail records and military personnel records, and conducted interviews of Hoffman over the course of two days, as well as shorter interviews with one of Hoffman's defense lawyers and a correctional officer. Dr. Saathoff ultimately found no history of mental illness and no current mental disease or defect that would render Hoffman incompetent to stand trial. During a sealed proceeding on June

9

24, 2013, the district court made a finding that Hoffman was competent to stand trial without objection from the defense but scheduled a further hearing for July 9, 2013.

On the day before the scheduled hearing, July 8, 2013, defense counsel filed a motion seeking authorization for additional services by Dr. Saathoff under the CJA. The defense did not dispute Hoffman's competency to stand trial but wished to have Dr. Saathoff examine "certain audio recordings" in which Hoffman participated to determine whether Hoffman "was insane or suffering from a mental disease or defect at the time of the charged offense." Defense counsel explained in the motion that they did not file a renewed Rule 12.2 notice because they did not have "a medical opinion upon which to base [an insanity] defense and/or filing." At the hearing the next day, the district court reiterated its finding that Hoffman was competent to stand trial and denied the motion for additional services. The district court set out its reasoning in a written opinion issued on July 18, 2013, in which it noted the defense's "inexcusable" failure to file a timely Rule 12.2 notice and concluding that the motion for additional services failed to establish any necessity for the requested psychiatric services.

The case proceeded to trial on August 15, 2013, and the jury returned a guilty verdict one week later. The district

10

court sentenced Hoffman to thirty years' imprisonment. This timely appeal followed.

## II.

### A.

Hoffman challenges as unconstitutional under the due process clause the district court's refusal to grant his pretrial motions for the assistance of a mental health expert. An indigent criminal defendant's right to due process includes the right to the appointment and assistance of a psychiatrist upon "a preliminary showing" in the trial court "that [the defendant's] sanity at the time of the offense is likely to be a significant factor at trial[.]" Ake v. Oklahoma, 470 U.S. 68, 74 (1985); see also Weeks v. Angelone, 176 F.3d 249, 264 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000). Additionally, Sixth Amendment guarantees to counsel and a fair trial require defense counsel to seek, and trial courts to provide, the assistance of a psychiatrist where necessary to present an adequate defense. Proffitt v. United States, 582 F.2d 854, 857 (4th Cir. 1978); see also United States v. Walker, 537 F.2d 1192, 1194 (4th Cir. 1976). Under the CJA, a district court must authorize funds for an indigent defendant's counsel to obtain expert services, including psychiatric services, upon request and a finding that such services are "necessary for adequate representation" "after appropriate inquiry in an ex parte proceeding[.]" 18 U.S.C. §

11

3006A(e)(1); see also Proffitt, 582 F.2d at 857 ("The expert services to which the Act refers include psychiatric assistance.") (citing United States v. Taylor, 437 F.2d 371, 377 (4th Cir. 1971)).

We review for abuse of discretion a district court's determination of whether expert services requested under the CJA are necessary for adequate representation. United States v. Hartsell, 127 F.3d 343, 349 (4th Cir. 1997). Any error in the district court's refusal to appoint an expert is reversible only upon a showing by the defendant that "the court's refusal was prejudicial to his defense." United States v. Perrera, 842 F.2d 73, 77 (4th Cir. 1988). To establish a constitutional violation in the denial of a motion for expert assistance, the defendant must adduce convincing evidence of actual prejudice. Hartsell, 127 F.3d at 349.

B.

Hoffman falls short of showing an abuse of discretion here, and in any event has not demonstrated the existence of prejudice. By his own admission, the March 21, 2013 motion presented no facts tending to establish that the broad mental health examination requested therein was necessary for adequate representation under the CJA. To the contrary, when the district court properly inquired about the necessity of the requested services at the ex parte hearing on the motion, defense counsel

12

explained that they had received reports from Hoffman about events during his career that turned out to be inaccurate, suggesting that he might be _presently_ suffering from a delusional mind state. Counsel did not offer any specific facts suggesting that Hoffman might have a history of mental illness or that his mental status at the time of the offense might contradict the government's allegation that he intended to commit espionage.

The facts of this case are materially unlike those relied upon by Hoffman, in which a defendant's right to psychiatric assistance in the development of his defense had been infringed. For example, at the time the defense in Ake requested appointment of a psychiatrist, Ake had exhibited "bizarre" behavior at his arraignment, a psychiatrist had found the defendant to be incompetent to stand trial and suggested commitment, a later finding of competency was conditioned upon frequent psychotropic medication during trial, and psychiatrists had reported that the defendant suffered from a mental illness that might have started years prior to time of the offense. Ake, 470 U.S. at 86. In United States v. Reason, the defendant had, the day prior to committing the charged bank robbery, escaped from a state hospital where he had been confined for over two years and suffered from paranoid schizophrenia. 549 F.2d 309, 310 (4th Cir. 1977). In Walker, the motion for a psychiatric

13

examination "alleged that prior to the [charged conduct,] Walker received serious head injuries in an assault[,]" which resulted in "headaches, . . . recurring periods during which he could not 'think straight,' and . . . permanent brain damage." 537 F.2d at 1193 n.1. The district court granted the motion but later refused additional funds for a further examination after the appointed psychiatrist failed, as instructed, to address Walker's capacity to commit the offense and after the defense learned of a report on Walker's mental condition completed during an earlier hospital commitment. Id. at 1193-95. In Taylor, the motion was "replete with factual allegations casting serious doubt on Taylor's responsibility for his conduct," "recit[ing] his extensive history of mental disturbance, his record of impulsive behavior, his own desire for treatment, and previous medical opinion to the effect that he was 'psychotic' and lacked sufficient internal controls over his conduct." 437 F.2d at 377.

Here, defense counsel presented no similar facts in support of the ex parte motion. Defense counsel's description of unexplained inaccuracies in Hoffman's statements to them about his past experiences was certainly sufficient to call into question Hoffman's then-present mental competency to assist his counsel and to stand trial. The district court properly determined that inquiry into Hoffman's competency was in order.

14

Although the district court might well have granted the motion for a broader exploration of his mental health history in the exercise of its discretion, the scant facts provided by counsel were not sufficient to compel the district court to do so, such that its denial amounted to a prejudicial abuse of discretion.

Moreover, the district court here did not simply deny the defense's request without leaving open the possibility of reconsideration. Rather, the court invited defense counsel to renew their motion for a mental examination once the competency assessment was complete, at which point information suggesting a need for further psychiatric investigation might be available. Given the weak showing of necessity, we cannot say that the district court abused its discretion in declining to grant the defense's request while inviting a renewal of the request upon completion of a competency examination.

C.

Hoffman places significant focus on the district court's directives at the ex parte hearing that the defense immediately file a motion for a competency determination and issue a notice under Rule 12.2 to the government. The contention that the district court's imposition of these requirements amounted to a prejudicial abuse of discretion is unpersuasive.

15

1.

Upon a finding of reasonable cause that a criminal defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent," the district court must either grant a motion by the defendant for a hearing to determine the defendant's mental competency or "order such a hearing on its own motion[.]" 18 U.S.C. § 4241(a). Hoffman does not challenge the district court's decision that an assessment of his competency to stand trial was appropriate. He simply argues that the district court should have ordered this assessment "on its own motion" rather than directing defense counsel to file a motion. Hoffman cites no legal authority forbidding the district court from directing counsel to file a § 4241(a) motion in this context. We find no merit in this formalistic contention.

2.

Nor did the district court's instruction that counsel file a Rule 12.2 notice amount to a prejudicial abuse of discretion. The question of a defendant's competency to stand trial is of course distinct from the question of his mental condition at the time of the offense or his criminal responsibility for his acts. See Walker, 537 F.2d at 1195. Rule 12.2 provides that a defendant who "intends" (a) "to assert a defense of insanity at the time of the alleged offense" or (b) "to introduce expert

16

evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt" must provide written notice to the government by the pretrial motion deadline "or at any later time the court sets," and file a copy with the district court. Fed. R. Crim. P. 12.2(a),(b). Upon issuance of the notice, the government may seek its own examination of the defendant, which the district court must order upon the government's motion. See 18 U.S.C. § 4242(a); Fed. R. Crim. P. 12.2(c)(1)(B).

Regardless of whether the district court should have demanded the issuance of a Rule 12.2 notice when it did, it is clear from the record that Hoffman was not actually prejudiced by this directive. First, it is undisputed that the government was already aware of the potential mental health issue. Therefore, by the time the Rule 12.2 notice issued, the government was already on actual notice that Hoffman might pursue a defense based on a mental condition. Second, Hoffman withdrew the formal notice within days of filing it and before the court ruled on the government's motion for its own mental examination of Hoffman. Indeed, the defense's withdrawal of the notice prompted the government to withdraw its motion. Accordingly, the district court's order that counsel file the 12.2 notice had no effect, substantial or otherwise, on Hoffman's defense.

D.

Hoffman also challenges the denial of his later motion for additional services, which requested authorization to engage Dr. Saathoff to provide an opinion about Hoffman's mental condition during the time he was in contact with "Vladimir" and the FBI by his examination of certain audio recordings. As already mentioned, the district court had invited the defense to renew its original motion for expert services upon review of Dr. Saathoff's report on Hoffman's competency to stand trial. But the defense did not renew the motion until July 8, 2013, approximately one month after Dr. Saathoff issued his report, and it did not cite any findings or opinions made in the report to show a need for further inquiry. Indeed, upon review of twenty years' worth of military personnel records and recent detention center records in addition to data gathered during several relevant interviews, Dr. Saathoff found no history of mental illness and no current manifestation of delusions or any other major mental illness. In the belatedly-filed motion for additional services, the defense accepted Dr. Saathoff's findings and opinions but sought his review of "certain audio recordings" of Hoffman "near the time of the alleged offense." However, the defense provided no explanation of why or how review of the audio tapes might be necessary for Dr. Saathoff to form a reliable opinion about Hoffman's mental condition at the

18

time of the offense. In short, the renewed motion made no greater showing of necessity for the requested services than had the original motion.

In any event, for Hoffman to present an insanity defense or to introduce expert evidence of a mental condition at trial, he was required to issue a Rule 12.2 notice to the government and file a copy with the district court by the extended pretrial motion deadline of May 31, 2013. <u>See</u> Fed. R. Crim. P. 12.2(a),(b). After withdrawing the original Rule 12.2 notice, the defense never timely reissued or refiled it, explaining in the motion for additional services that they lacked an expert opinion upon which to base an insanity defense. By the time the defense renewed the motion for psychiatric services, it was too late to issue a Rule 12.2 notice without leave of the court. As to the timing of the motion itself, defense counsel explained that they had recently learned that certain assertions by Hoffman about his prior experiences, not specifically stated in the motion, were untrue. As the district court noted in its opinion, however, this was not a new concern for counsel and was indeed part of the very reason that the court ordered the assessment of Hoffman's competency months prior. The district court concluded that the defense lacked good cause to justify late filing of the requisite Rule 12.2 notice. <u>See</u> <u>id.</u>

In light of this ruling, Hoffman was precluded from asserting an insanity defense or introducing expert mental status evidence at trial and thus had no use for a further expert inquiry into his mental condition at the time of the offense. See United States v. Fince, 670 F.2d 1356, 1357-58 (4th Cir. 1982) (district court properly denied § 3006A(e)(1) request for expert assistance of chemist to develop a defense deemed meritless by the Fourth Circuit and therefore "appointment of [the] expert would have served no useful purpose"). Without a stronger showing of necessity for the services requested, and a concomitant showing that the denial of the motion resulted in actual prejudice to the defense, we cannot say it amounted to an abuse of discretion for the district court to deny the defense's motion for additional psychiatric services.

### III.

Hoffman also seeks review of an order issued by the district court protecting certain classified information from discovery and a second order restricting inquiry at trial into matters related to the protected information. Specifically, Hoffman requests review of the protected matters for information relevant to his mental condition or a potential entrapment defense and any other discoverable information. Upon our review of the orders and relevant portions of the record, we find no reversible error.

20

A district court may permit a party to make an ex parte showing of good cause to restrict discovery and, upon such a showing, enter an appropriate protective order. Fed. R. Crim. P. 16(d)(1). Section 4 of the CIPA provides that the district court may, "upon a sufficient showing," permit the government to omit classified information from materials produced to the defendant in discovery. 18 U.S.C. App. III § 4. Section 6 provides that, upon the government's motion, the court must determine prior to trial the use, relevance, or admissibility of classified information. Id. § 6(a). In these and other ways, the CIPA "serves to protect" "the governmental privilege in classified information" and "vests district courts with wide latitude to deal with thorny problems of national security in the context of criminal proceedings." United States v. Abu Ali, 528 F.3d 210, 247 (4th Cir. 2008). We review a district court's rulings under the CIPA for abuse of discretion. Id. at 253.

Before trial, the government filed an ex parte motion in the district court under § 4 seeking to protect certain classified information from discovery and a motion in limine under § 6 to prevent classified information of the same nature from being used at trial. The district court determined that the information at issue was properly classified and therefore implicates the governmental privilege; that it is not exculpatory, impeaching, or material to the preparation of the

21

defense; and that its disclosure could cause grave and serious damage to the national security of the United States.

Upon our in camera review of the classified materials, we conclude that the district court did not abuse its discretion. The protected information does not include any statement made by Hoffman "in response to interrogation by a person [he] knew was a government agent," or any information "material to preparing the defense" or obtained from Hoffman. Fed. R. Crim. P. 16(a)(1)(A),(E). The information offers no support for an entrapment defense, and any inferences bearing on a determination of Hoffman's mental condition are wholly absent. Even if the information was discoverable under Rule 16(a), it was classified information subject to the governmental privilege. Although the governmental privilege is "a qualified one," it need not yield in this case because the information at issue here is not "helpful to the defense" or "essential to a fair determination of a cause." United States v. Smith, 780 F.2d 1102, 1107 (4th Cir. 1985) (en banc).

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.